SMITH et al. v. McADAMS et al. (No. 8026.)

(Court of Civil Appeals of Texas. Dallas. Nov. 16, 1918. Rehearing Denied Dec. 14, 1918.)

1. CORPORATIONS ⊕=99(1) — "ISSUANCE OF STOCK" — CONSTITUTIONAL AND STATUTORY PROVISIONS.

Provisions of Constitution and laws, forbidding acceptance of anything for capital stock of corporations except money, property, or labor, are not violated, so as to be a defense to notes given on subscription to capital stock, where there has been no "issuance of stock" which requires actual or constructive delivery of certificates.

2. APPEAL AND ERROR ⊕=1010(1)—REVIEW—FINDING.

Finding of trial court upon substantial evidence will not be disturbed by the Court of Civil Appeals.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Y. O. McAdams and another against T. A. Smith and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Evans & Sayle and L. L. Bowman, all of Greenville, for appellants.

Clark & Sweeton, of Greenville, for appellees.

TALBOT, J. Y. O. McAdams and E. A. Jones, the appellees, sued T. A. Smith as principal, and J. S. Sherril, A. W. De Fee, and P. A. Cunningham, as sureties, the appellants, on a promissory note dated October 28, 1914, for the sum of $18,000, and due October 1, 1915, bearing interest at the rate of 10 per cent. per annum, and containing the usual provision for 10 per cent. additional as attorney's fees if placed in the hands of an attorney for collection. The appellees also sued the said T. A. Smith, as principal, and J. O. Boyle and Henry Massey, as sureties, on a promissory note, dated October 28, 1914, for the sum of $2,572, due October 1, 1915, bearing the same rate of interest, and providing for attorney's fees as did the first note mentioned. The appellants answered, and so far as is necessary to state for the purposes of the appeal, in view of the single assignment of error presented, pleaded a general denial, and spe-

cially that in the month of February, or March, 1913, the defendant T. A. Smith subscribed for shares of stock in the Empire Express Company, a corporation, amounting to the sum of $5,000, and in payment for said stock executed three promissory notes to the Empire Express Company, or indorsed them in blank, or indorsed them to Y. O. McAdams and S. F. Snyder, who were acting as corporate officers and the authorized agents of the Empire Express Company, and each of whom were promoting said corporation; that the notes sued on herein are renewals of the original notes given for said stock, and that said original indebtedness for which the original notes were given was not for money advanced by the plaintiffs to the defendant, as alleged by the plaintiffs in their said answer, but that said notes were given in full payment for said stock; that the said Y. O. McAdams was president of said Empire Express Company, and E. A. Jones was treasurer of said corporation, and that said notes were renewed and made payable to them at their request, but were for the original consideration as hereinbefore set forth, and that said original notes and indebtedness, as well as the renewals upon which this suit is based, were the only payment made for said stock; that no stock in said corporation has ever been delivered to him, but that he is informed that such stock was attached to one or all of his notes as collateral security; that no other consideration was received by said plaintiffs for said notes; that said stock is void and worthless, and was at the time of the creation or attempted creation of the original notes and the renewals thereof, in that the whole scheme, as originated and carried out by the promoters, was void, because it contemplated and resulted in the violation of the provisions of the state Constitution and statutes, which forbid a corporation from accepting anything in payment of its capital stock, except money or property, or labor actually performed; that it was understood by the parties to the subscription contract that no money or property or labor would be paid for said stock, but that in lieu thereof the defendant would give his promissory notes as aforesaid; that if the plaintiffs advanced any money, or paid out any money, on said notes, they did so without the knowledge and consent of this defendant, and without any agreement to that effect. All other defendants pleaded suretyship and adopted answer of T. A. Smith. The cause was tried without a jury, and judgment was rendered for the plaintiffs against the defendants for the amount of notes, with interest and attorney's fees. Appellants' motion for a new trial was overruled, and they appealed.

There is but one assignment of error, and but one proposition urged in the brief. The substance of the assignment is that the trial court erred in rendering judgment against the appellants, because the undisputed evidence showed that the notes sued on were without consideration and void, for that they were executed and delivered in payment for capital stock of the Empire Express Company, in violation of the Constitution and laws of this state, which forbid a corporation from accepting anything in payment for such stock, except money, property, or labor actually performed. The proposition is:

"A promissory note, or renewal thereof, given in payment of capital stock of a private corporation incorporated under the laws of this state, is void and unenforceable."

The court, at the request of the appellant T. A. Smith, filed the following conclusions of fact and law:

(1) Some time in December, 1912, one Snyder, who testified as a witness in the case, began the promotion of a corporation to be organized and known as the "Empire Express Company," and to have a capital stock of $120,000, one-half of which was to be paid at the time the charter should be prepared and applied for.

(2) Subscriptions to the capital stock were solicited and procured by the said Snyder, who was later on assisted by the plaintiff Y. O. McAdams. There were a large number of subscribers to the capital stock, procured in different amounts, and all of the amount of the stock was subscribed for, and 50 per cent. thereof paid into the company in cash, prior to the time the charter was applied for and granted by the secretary of state in January or February, 1913.

(3) Among the subscribers to the capital stock was the defendant T. A. Smith, who subscribed in writing for 500 shares, of $10 each (the stock of said corporation being divided into shares of $10 each); the details of the transaction being as follows: Snyder, for the purpose of having the stock subscription complete, had subscribed for more stock than he intended to retain. It was agreed between Snyder and Smith that the latter would take 500 shares of the former's subscription, Snyder to pay the company for one-half thereof and take Smith's note for this amount and a promotion fee, and substitute Smith's note to the company for the other half of his obligation for said 500 shares.

(3a) At the time Smith subscribed for the said stock, McAdams and Snyder promised to have him employed by the company, when it should begin operating, as chief bookkeeper and auditor. The Empire Express Company has not begun operating an express business on account of the refusal of the railroad companies to haul its cars. It has a suit now pending in the Supreme Court, wherein it is seeking to enforce the rights it claims in this respect and to recover penalties.

(4) Under the agreement by which the company was organized, 50 per cent. of the stock subscribed for by each party was to be paid at the time of the organization, and before the charter was applied for, and it seems that the remainder was to be paid for when required by the corporation. The evidence does not render entirely certain when the remainder was to be paid. Some of the stockholders paid up their entire subscription, but the defendant T. A. Smith had not paid any of his subscription.

(5) Said Snyder, and a number of others joining with him, had the charter prepared, showing themselves to have subscribed for the entire capital stock, and to have paid in 50 per cent. thereof, this being done by them merely to procure the charter, and there was no understanding or agreement between them, or among the stockholders, that any subscriber to the capital

stock should be released from his obligation as such subscriber.

(6) The subscription of the defendant T. A. Smith was an unconditional obligation to take 500 shares of the capital stock, and to pay $5,000 for the same, as above stated, and, in addition to this, he was to pay a promotion fee to the said Snyder of $1,650.

(7) After the charter was applied for and procured, it was arranged between the said Snyder and the defendant T. A. Smith that Snyder would accept a promissory note from the said defendant for the sum of $4,125, payable to the said Snyder, and that Snyder would assume Smith's obligation to the company for the advanced payment of $2,500, due one year from date, upon the payment of which he would become the owner of the number of shares subscribed. When the said Smith originally subscribed for the 500 shares of stock, he executed a promissory note, payable to himself and indorsed in blank, for the sum of $5,000, and the notes above mentioned were executed in renewal of and in substitution for the original obligation, and included the promotion fee in addition.

(8) At about the same time the new notes mentioned in the above finding were executed, Snyder sold his interest in the company, including the promotion fees due him, to the plaintiff Y. O. McAdams, who assumed all of Snyder's obligations, including his obligation to pay the company $2,500 on Smith's subscription, and substantially at the same time the plaintiff E. A. Jones purchased from the plaintiff Y. O. McAdams one-half of the property and interest in the corporation and promotion fees, which McAdams had procured from Snyder, and assumed one-half of the Snyder obligation. Immediately after this the said Jones and McAdams paid into the company $2,500 to the account of defendant Smith's stock subscription, and the same was accepted by the company.

(9) After said money was paid, the officers of the company filled out and signed a certificate for 500 shares of stock, purporting to be issued to the defendant T. A. Smith, and attached thereto said Smith's renewal note for $2,500, above mentioned, and has retained possession of said certificate and said note ever since, and now has possession thereof. The certificate was never delivered to the said T. A. Smith, and was never intended to be delivered to him, until and unless said $2,500 note should be paid.

(10) When the note for $4,125, executed by Smith and Snyder, and which became the property of plaintiffs, McAdams and Jones, under the transactions above detailed, became due, Smith having failed to pay the same, or any interest due thereon, he executed four notes in renewal thereof, two for part of the interest due up to that time, and the notes herein sued on for the principal and the remainder of the interest; the notes sued on being signed by the sureties whose names appear thereto, and each of the interest notes being likewise signed by sureties. No part of the notes sued on, principal or interest, has ever been paid, and the one for the principal sum of $1,800, including interest thereon and attorney's fees, amounts to $2,513.50, and the one for the principal sum of $2,572, including interest thereon and attorney's fees due thereon up to this date, amounts to $3,595.20.

(11) I find that these notes are unconditional obligations, and that there was no contract when the original note, in renewal of which they were given, was executed, by which the defendant T. A. Smith was to be employed for any definite time or for any stated amount; and I further find that, when the notes herein sued on were executed, there was no understanding and nothing said about giving the defendant T. A. Smith employment with the Empire Express Company or otherwise.

### Conclusions of Law.

I conclude that the defendant T. A. Smith was legally bound for the amount of the par value of the stock subscribed for, together with the amount of the promotion fees he was to pay; that the stock was never "issued" to him, in the sense prohibited by the Constitution of this state; that $2,500, or one-half of the par value thereof, has actually been paid in for his use and benefit by the plaintiffs in this case, in partial discharge of his obligation to the company; that the notes sued on are valid and legal obligations against him and the sureties appearing thereon; that the organization of the Empire Express Company was legal and valid; and that there was nothing illegal or invalid in any of the transactions involved in this suit.

[1, 2] The foregoing findings of fact by the trial court are, in our opinion, supported by the evidence and justify the judgment rendered. The findings are therefore adopted by this court, and the judgment will be affirmed. Similar questions to the one here presented have been in many cases passed upon by our appellate courts, and so familiar have they become that we deem it unnecessary to cite and review them. It will suffice to say that, in our opinion, neither of them requires a reversal of this case. The contention of the appellants is to the effect that the stock in question was issued to T. A. Smith in consideration of the notes sued on, and that therefore said notes are void; while the reverse of this contention is urged by the appellees, their insistence being that none of the stock of the Empire Express Company was issued to appellant T. A. Smith, or intended to be issued, until the stock was paid for in money. The court, upon testimony warranting it, held with the appellees, and rendered judgment in their favor. The court seems to have taken the view, which we think is correct, that there could not have been an issuance of the stock, within the meaning of the respective provisions of the Constitution and statute prohibiting corporations from issuing stock, except for money paid, labor done, or property actually received, without either an actual or constructive delivery of the certificate representing the stock, and the effect of its finding is that there was neither an actual nor a constructive delivery of such certificate in this case. The issues of fact upon which a decision of the case turned were controverted issues, and since the trial court, upon substantial evidence authorizing it, resolved them in favor of the appellees, this court would not be warranted in disturbing the judgment rendered.

It is therefore ordered that the judgment be affirmed.