Argued June 18, affirmed July 21, rehearing denied September 15, motion to recall mandate denied October 6, costs taxed November 10, 1925.

# THOMPSON OPTICAL INSTITUTE *v.* R. A. THOMPSON.

(237 Pac. 965.)

**Goodwill—Evidence Held to Show Seller of Business Violated Covenant not to Engage in Business Within State.**

1. Evidence *held* to show that defendant, who had sold his optical business to plaintiff, had violated his covenant not to engage in the optical business within the state.

**Contracts—Construction Given to Contract Which will Make It Legal.**

2. That construction should be given to a contract which will make it legal, rather than one which will make it void.

**Corporations—Defendant Organizer of Corporation Could not Challenge Validity of Contract not to Engage in Optical Business Within State, or Proper Organization of Corporation to Which Business was Sold.**

3. Defendant could not challenge validity of contract not to engage in optical business within the state, or proper organization of corporation to which his optical business was sold, where he was the first organizer of corporation, gave it his name, subscribed for all but three shares of its capital stock, and then sold and transferred his stock to president of corporation, and corporation had carried on its business under contract for more than five years, and defendant had not refunded money received on sale of stock.

**Corporations—Certified Copy of Articles of Incorporation Constitute Prima Facie Showing of Existence of Corporation.**

4. Certified copy of articles of incorporation filed with county clerk constitute a *prima facie* showing as to existence of corporation, and of its right to do business mentioned in its articles of incorporation, in view of Section 6857, Or. L.

**Corporations—Evidence Held to Show That Corporation was at Least De Facto.**

5. Evidence *held* to show that corporation to which defendant sold his optical business was at least *de facto.*

---

1. Sale of business and goodwill as limitation upon vendor's right to engage in competing business, see notes in 19 L. R. A. (N. S.) 762; L. R. A. 1918F, 1179. See, also, 12 R. C. L. 988.
2. See 6 R. C. L. 839.
4. See 7 R. C. L. 103.

Corporations—Validity of De Facto Corporation cannot be Inquired into in Collateral Proceeding.

6. Validity of *de facto* corporation cannot be inquired into in collateral proceeding.

Contracts—Contract Having for Its Object Commission of Fraud on Public is Illegal.

7. Contract having for its object the commission of a fraud on the public is illegal.

Goodwill—Contract for Sale of Optical "Institute" to Corporation With Agreement not to Engage in Business Within State Held not Illegal.

8. Contract by which defendant sold his business known as "Thompson Optical Institute" to corporation and agreed not to engage in the business within the state *held* not to have for its object deception of public and thereby to be illegal, where it did not permit buyer corporation to represent to public that optical goods manufactured or sold by it constituted the handiwork of defendant, or that defendant operated the "Thompson Optical Institute"; "institute" being a term of wide meaning according to the context.

Contracts—General Definition of Single Word not Conclusive as to Its Meaning, When Used in Connection With Other Words.

9. In construction of a writing general definition of a single word is not conclusive as to its meaning, when used in connection with other words.

Injunction—Allegation Held to Show That Stock was Issued to Defendant in Consideration of Sale of Optical Business to Corporation.

10. In suit to restrain violation of contract by which defendant agreed not to carry on the optical business within the state, allegation that defendant sold the business to corporation in consideration of issuance to him of shares of stock *held* to show that stock was issued to defendant.

Pleading—All Intendments Indulged in Favor of Sufficiency of Complaint, Where Defendant Answered Over.

11. Where defendant did not rest on his demurrer but answered over, all intendments would be indulged in favor of sufficiency of complaint.

Contracts—Contracts in Partial Restraint of Trade, Based on Valuable Consideration and Reasonable in Operation, are Legal.

12. Contracts in partial restraint of trade, based on a valuable consideration and reasonable in their operation, are legal, and, when a party sells his business and goodwill thereof, it is competent for vendor to contract that he will not engage in a like business in a certain place.

---

6. See 7 R. C. L. 68.

**Contracts—No Distinction Between Contracts in Restraint of Trade Entered into by Professional Men and Those of Tradesmen.**

13.   No distinction is made between contracts in restraint of trade entered into by professional men and those of tradesmen.

**Goodwill—Contract for Sale of Optical Business and in Restraint of Trade not Rendered Invalid Because Buyer Corporation Could not be Licensed to Practice Optometry.**

14.   Contract for sale of defendant's optical business to corporation, with agreement by defendant not to engage in such business within the state, *held* not invalid because corporation was not such a person, within Chapter XXII, Title XLV, Or. L., as might take an examination and receive a license for practice of optometry, where it did not appear that it contemplated commission of any act denounced by statute as a crime.

See (1) 28 **C. J.**, p. 747.   (2) 13 **C. J.**, p. 539.   (3) 14 **C. J.**, p. 236. (4) 14 **C. J.**, p. 168.   (5) 14 **C. J.**, p. 214.   (6) 14 **C. J.**, p. 204.   (7) 13 **C. J.**, p. 414.   (8) 13 **C. J.**, p. 414; 32 **C. J.**, p. 942.   (9) 13 **C. J.**, p. 531.   (10) 32 **C. J.**, p. 319.   (11) 31 **Cyc.**, p. 719.   (12) 13 **C. J.**, p. 473.   (13) 13 **C. J.**, p. 476.   (14) 13 **C. J.**, p. 412.

From Multnomah: ROBERT A. TUCKER, Judge.

Department 2.

This is an appeal from a decree restraining the defendant from the violation of the terms of an alleged contract whereby he agreed to refrain from engaging in the business of the manufacture and sale of optical goods and from carrying on an optical institute.

AFFIRMED.   REHEARING DENIED.   MOTION TO RE- CALL MANDATE DENIED.   COSTS TAXED.

For appellant there was a brief over the names of *Mr. Wilber Henderson* and *Mr. John P. Hannon*, with an oral argument by *Mr. Henderson*.

For respondent there was a brief and oral arguments by *Mr. W. P. La Roche* and *Mr. J. B. Ofner*.

BROWN, J.—Robert A. Thompson, defendant herein, R. A. Thompson, and Dr. Thompson are one and the same person.

The defendant, by his counsel, has carried on a vigorous defense to plaintiff's suit. He has asserted the invalidity of the organization of the plaintiff corporation known as "Thompson Optical Institute," and also avers the illegality of the contract upon which this suit is founded.

A knowledge of the facts is essential to a solution of the questions involved herein. For a number of years prior to the organization of the corporation, defendant Thompson had carried on an optical business under the name of "Thompson Optical Institute." On August 2, 1916, the defendant and two others associated themselves together for the purpose of forming a corporation to be known as the "Thompson Optical Institute" under the laws of the State of Oregon, and subscribed to articles of incorporation for such purpose. The enterprise in which the corporation proposed to engage was "to buy, sell, manufacture, and deal in eye glasses and optical goods of every kind, nature and description; to fill prescriptions for eye glasses and optical goods; to operate an optical institute where eyes are examined and glasses fitted and furnished," and to make and carry out contracts pertaining to such business. The capital stock of the corporation was placed at $20,000, divided into 200 shares of the par value of $100 each.

The first meeting of the stockholders of Thompson Optical Institute was held at its principal place of business in Portland, Oregon, on January 30, 1917. The following stockholders, being the subscribers to all the capital stock of the corporation, were present at the meeting in person:

| | | |
|---|---|---|
| R. A. Thompson, | 197 | shares; |
| E. B. Wheat, | 1 | share; |
| Bessie A. Rusco, | 1 | share; |
| Charles A. Rusco, | 1 | share. |

Thompson, the defendant herein, was elected chairman of the meeting. A board of directors was elected and the following resolution was unanimously adopted:

"Resolved: That the board of directors enter into an agreement with R. A. Thompson, wherein and whereby this corporation purchase from said R. A. Thompson the business now being conducted by him and known as 'Thompson Optical Institute' carried on in the Corbett Building of the city of Portland, Oregon, together with the good will thereof, including all copyrights, stock on hand, and chattels, together with an assignment of the lease, said agreement to contain a clause to the effect that said R. A. Thompson is not to engage in the same line of business in the state of Oregon for a period of 20 years in the event he disposes of his stock in the within corporation, and issue unto the said Thompson therefor 197 shares of the capital stock of the said corporation fully paid up."

To this resolution is affixed the signature of Thompson himself as president, that of B. A. Rusco, secretary, and all the stockholders signed the minutes.

On the same day defendant Thompson made and entered into a contract for the sale of his optical business that he called the "Thompson Optical Institute" to the corporation likewise known as the Thompson Optical Institute. The contract recites:

"Whereas, said first party (defendant) has for a number of years past, in the city of Portland, Oregon, engaged in the business of buying, selling, manufacturing, and dealing in eye glasses and optical goods, and filling prescriptions for eye glasses and optical goods, and operating an optical institute where eyes are examined and glasses fitted and furnished; and,

"Whereas, said first party (defendant Thompson) has subscribed for 197 shares of the capital stock of

Thompson Optical Institute, a corporation, second party herein; and,

"Whereas, said Thompson Optical Institute is desirous of purchasing and acquiring said business of Robert A. Thompson and issuing therefor to said Robert A. Thompson 197 shares of the capital stock of said corporation; and,

"Whereas, said Robert A. Thompson is desirous of paying for said 197 shares of said stock by transferring to said Thompson Optical Institute said business;

"Now, therefore, in consideration of the issuance to said first party (of) 197 shares of the capital stock of the Thompson Optical Institute, fully paid up, to said first party, said first party does hereby sell, assign, and transfer to said second party said optical business and the good will and benefits thereof, together with all the fixtures, furniture, books, surgical and optical instruments, stock, apparatus and appliances, and the prescriptions belonging to said first party acquired in conducting said business, also all prints, electrotypes and advertising matter, also the right to use all of said cuts and plates, including the photograph of said first party and his name, as fully and to the same extent as the same have been used by said first party in carrying on his said business; also the full use of all copyrights, names and phrases, and all copyrights owned or posessed by said first party, either in his own name or in the name of 'Thompson Optical Institute.' "

The next paragraph provides that the defendant Thompson will introduce and recommend the Thompson Optical Institute to his patients, friends and others, and will endeavor to promote the prosperity of the vendee. The succeeding paragraph provides that the defendant Thompson shall not, directly or indirectly, engage in the above described business or in any similar business in this state for a period of twenty years from January 30, 1911.

119 Or.—17

At about the same time, the defendant sold and transferred his 197 shares of stock to Charles A. Rusco, the present manager and president of the corporation.

The testimony shows that after the expiration of about five years the defendant returned to Portland and established an office in the Morgan Building to carry on optical work, and that, in furtherance of his plan he began an advertising campaign in certain newspapers of general circulation throughout the state. Illustrative of the character of the advertising matter, we copy the following:

" (Photograph)
"Dr. R. A. Thompson.

"Just to let you know that I am now in my new location in Suite 327 Morgan Building. To those who have gone elsewhere for their optical work during my absence, or those of limited financial means, every kindly consideration will be extended. Thirty years' continuous practice in this one specialty, with European clinical training and experience, places me in a position to guarantee an absolute, accurate diagnosis in the most complicated cases. You are assured of a personal service that is exceptional in its conception and completeness. Nothing has been left undone to make my work for the conservation of human vision a hundred per cent efficient. I will be pleased to see again the familiar faces of former days."

In announcing his return and his expectation to re-enter business, in part he advertised:

that he had been "doing optical and research work in the Hawaiian Islands and the principal European capitals. * * I have labored hard and diligently, learning all that the brightest minds of England, France and Germany had to offer. At present I am in no way connected with any business using my name, having sold my entire interest before leaving Portland."

Charles A. Rusco, president and general manager of the Thompson Optical Institute, testified to the following conversation had with defendant Thompson after he had received information that Thompson was again engaging in business:

"Q. Just repeat the conversation.

"A. I says, 'I see by the papers * * that you started in business again, in the optical business.' He says, 'Yes, I have.'

" * * I said, 'You had those ads put in?' He said, 'I did.' I says, 'You mean to say that you are fitting glasses and examining eyes and fitting glasses?' He says, 'I am, very much so.' He says, 'And all my old customers are coming back to me, and inside of 90 days you will be damned glad to sell out to me.' * * I said, 'Do you know we have a contract where you agreed not to go into the optical business?' * * He said, 'To· h—— with the contract. We have no contract.' "

C. L. Bender, an eye specialist and registered optometrist of Oregon, testified that he was in the employ of the plaintiff, and that, prior to the sale of defendant's optical business to the plaintiff he had been in the defendant's employ. He testified that on one occasion, after the defendant had sold to the plaintiff and a short time before the institution of this suit, defendant came to his residence, requested him to leave the employment of the plaintiff, Thompson Optical Institute, and offered him a large salary to go into business with him.

1, 2. The truth of the allegation that defendant has violated his covenant not to engage in the optical business in the State of Oregon is conclusively proved. But, the defendant says, the contract is not legal and the plaintiff corporation was not properly organized. That construction should be given to a contract which will make it legal, rather than one which will make

it void: *Hildebrand* v. *Bloodsworth*, 12 Or. 75 (6 Pac. 233); *Arment* v. *Yamhill County*, 28 Or. 474 (43 Pac. 653). The record shows that the defendant was the guiding hand and the chief organizer of the corporation. He gave it his name. He subscribed for all but three shares of its capital stock. He presided at a meeting of the stockholders and directors of the company when a resolution to purchase his optical business known as "Thompson Optical Institute" was adopted. He made a contract of sale and sold and delivered that business to the corporation for the consideration of 197 shares of the capital stock thereof. He then sold and transferred his stock to Charles A. Rusco, the president and manager of the plaintiff corporation, and the corporation has carried on its business under the terms of the contract for a period of more than five years. He yet retains the money received upon the sale of his stock. He deliberately violates his restrictive covenants and declares to the purchaser of his stock, "Inside of 90 days you will be damned glad to sell out to me."

3. In the light of the foregoing, the defendant cannot be heard to challenge the validity of the contract or the proper organization of the corporation.

4–6. A certified copy of the articles of incorporation filed with the county clerk was adduced in evidence by the plaintiff. This constituted a *prima facie* showing as to the existence of the plaintiff corporation, and of its right to do business mentioned in its articles of incorporation: Or. L., § 6857. Moreover, the testimony has shown beyond question that the Thompson Optical Institute is at least a *de facto* corporation. The validity of such corporation cannot be inquired into in this proceeding: *Northern Pacific Ry. Co.* v.

*John Day Irrigation District,* 106 Or. 140 (211 Pac. 781), and the Oregon authorities there collated.

The execution of the contract is questioned.

"It will be presumed that persons in office are rightfully there * * and have acted regularly in the performance of official and representative duties and functions; that the executing officer had authority if the instrument is sealed with the corporate seal." 5 Fletcher Cyclopedia Corporations, § 3093.

The execution of the contract herein involved is established by the record, and that contract has been acted upon and treated as valid by each party thereto for years.

7, 8. It is contended that the contract herein considered has for its object the deception of the public and is, as a consequence, illegal. It is well-settled law that a contract having for its object the commission of a fraud upon the public is illegal: 2 Elliott on Contracts, § 656. However, this contract does not, as asserted, permit the plaintiff to represent to the public that the optical goods manufactured or sold by it constitute the handiwork of Dr. Robert A. Thompson. Nor does it permit the plaintiff to represent that Dr. Thompson operates what plaintiff and defendant have designated "Thompson Optical Institute." While passing, we will observe that the term "institute" is a term of wide meaning and may carry any one of several meanings, according to the context: 32 C. J., 942. See Century Dictionary; Webster's International Dictionary.

9, 10. The objection that the complaint failed to state a cause of suit for failure to plead a consideration cannot avail the defendant. It is asserted that the words "the issuance" indicate a thing to be done at some future time. We have set out the contract above. In the construction of a writing, the general

definition of a single word is not conclusive as to its meaning when used in connection with other words. While the averment in the pleading might have been clearer, it is sufficient. From the allegation, which reads, in part:

"In consideration of the issuance to said party (Thompson) 197 shares of stock of the Thompson Optical Institute, fully paid up,"

we think it appears that the stock was issued to the defendant. For a case directly in point, see *Smith* v. *McAdams* (Tex. Civ. App.), 206 S. W. 955. See, also, 33 C. J. 817; Webster's International Dictionary.

11. In the case at bar, the defendant did not rest upon his demurrer, but answered over. Hence as stated by Mr. Justice WOLVERTON, in *Oregon & Cal. R. R. Co.* v. *Jackson County,* 38 Or. 589 (64 Pac. 307, 65 Pac. 369):

"The defendants having answered over, all intendments must be indulged in favor of the sufficiency of the complaint."

12, 13. Formulated from modern decisions, we have the rule that contracts in partial restraint of trade, based upon a valuable consideration and reasonable in their operation, are legal, and that, when a party sells his business and the good will thereof, it is competent for the vendor to contract that he will not engage in like business in a certain place: *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211, L. R. A. 1915A, 697); *Feenaughty* v. *Beall,* 91 Or. 654 (178 Pac. 600); *Coker & Bellamy* v. *Richey,* 104 Or. 14 (202 Pac. 511, 204 Pac. 945, 22 A. L. R. 744). Moreover, it is abundantly established by the authorities that no distinction is made between contracts in restraint of trade entered into by professional men, such as physicians, surgeons, lawyers and dentists, and those of tradesmen.

14. In *Thorn* v. *Dinsmoor*, 104 Kan. 275 (178 Pac. 445), the defendant sold to plaintiff his law library and law business and thereafter violated the restrictive covenants of his contract not to practice law in Caldwell. The defendant contended that the contract was void because the plaintiff had not been admitted to practice law at the time the contract was executed. The court held that the plaintiff's failure to pass the bar examination did not impair his rights under the contract.

The case of *Miller* v. *Eller,* 192 Iowa, 147 (183 N. W. 498), is in point. This was a suit for specific performance of contract wherein the defendant, after contracting to sell his office equipment and practice, refused to perform on the ground that the vendee was not yet licensed to practice. In rendering its opinion, the court said:

"If the appellee had attempted before passing the examination of the dental board to practice dentistry, it would have been a matter for action by proper legal authority. But the appellant cannot refuse to perform the contract on his part merely because, at the time fixed for performance, the appellee was not yet licensed to practice. If the appellee had died, his administrator could still have enforced this contract. If the appellee had assigned the contract to another person, whether dentist or not, it could have been enforced against the appellant."

The following are a few of the many cases relating to the sale of the goodwill of practicing physicians: *Webster* v. *Williams,* 62 Ark. 101 (34 S. W. 537); *Bradbury* v. *Bardin,* 35 Conn. 577; *Hoyt* v. *Holly,* 39 Conn. 326 (12 Am. Rep. 390); *Pickett* v. *Green,* 120 Ind. 584 (22 N. E. 737); *Martin* v. *Murphy,* 129 Ind. 464 (28 N. E. 1118); *Gilman* v. *Dwight,* 13 Gray, 356 (70 Am. Dec. 634); *Dwight* v. *Hamilton,* 13 Mass.

175; *Warfield* v. *Booth,* 33 Md. 63; *Butler* v. *Burleson,* 16 Vt. 176; *Tichenor* v. *Newman,* 186 Ill. 264 (57 N. E. 826); *Mills* v. *Cleveland,* 87 Kan. 549 (125 Pac. 58).

For many purposes a corporation is deemed a person. However, a corporation is not such a person, within the meaning of our statute regulating the practice of optometry as prescribed by Chapter 22, Title XLV, Oregon Laws, as might take an examination and receive a license for such practice. But there is no evidence before us that this plaintiff corporation has committed, or contemplates the commission of, any act denounced by our statute as a crime.

This case is affirmed.

AFFIRMED. REHEARING DENIED. MOTION TO RECALL MANDATE DENIED. COSTS TAXED.

McBRIDE, C. J., and BEAN and BELT, JJ., concur.