Thomas R. YANDELL and Dorothy S. Yandell, husband and wife, Plaintiffs,

v.

UNITED STATES of America, Defendants.

Civ. No. 61–384.

United States District Court D. Oregon.

July 3, 1962.

Hutchinson, Schwab & Burdick, Dwight L. Schwab, Denton G. Burdick, Jr., Portland, Or., for plaintiff.

Sidney I. Lezak, Acting U. S. Atty., Dale Anderson, Sp. Atty., Internal Revenue, Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

This is an action to recover income taxes paid on an asserted deficiency for the calendar year 1958.

For many years prior to August 6, 1958, plaintiff Thomas R. Yandell was a co-partner with one Leslie Clarke in a business known as Clarke Publishing Company. This company was engaged in the advertising and publishing business in Portland, Oregon, and was primarily interested in the publication of neighborhood shopping newspapers. Prior to the formation of the partnership, Yandell and Clarke each operated their own advertising and publishing business in said area. Yandell's principal duty in connection with the partnership was supervising the purely business area of the operation. Clarke was engaged in supervising the actual publishing of the newspaper, in which operation he used his privately owned printing company and its fixtures, machinery and equipment. Plaintiff had no interest in this printing establishment.

In 1958 the partners engaged in an extremely acrimonious partnership fight, as a result of which rather heated and bitter litigation arose. In June of that year, Clarke instituted an action against Yandell in the Circuit Court for the State of Oregon for Multnomah County, a court of general jurisdiction, asking for a declaratory judgment as to the respective rights of the parties and that the partnership be dissolved and for such further and additional relief as might be necessary and proper in the premises. Subsequent to the filing of the complaint the partners, through their respective counsel, started negotiations for a settlement of the litigation. The first draft of a settlement contract mentions, among other things, a sale of "good will," no mention being made of a "covenant not to compete." The second draft mentions a "covenant not to compete." The third draft provides that Yandell's share of the purchase price for "good will" should be determined by a board of arbitration, while the final draft eliminates the language "good will as determined by arbitrators" and substitutes therefor a "covenant not to compete" on the part of Yandell. The record is quite clear that the question of the tax consequences of the transaction were thoroughly discussed by the partners and by their respective counsel and that Clarke and his attorney insisted on the "covenant not to compete" being an essential part and parcel of the final draft. The final draft was signed by the parties and the original lodged in the court above mentioned, and based thereon, an order was entered approving the stipulation as signed, thus disposing of the controversy. In this final draft it is provided that Clarke pay Yandell the sum of $15,000 for the "covenant not to compete." The issue presented is whether the item of $15,000 included in the sale of Yandell's interest in the partnership represented a sale of good will and thus entitled to capital gains treatment, or whether it was consideration for a covenant not to compete and thus represented ordinary income to Yandell. On the income tax return the plaintiffs took the position that they were entitled to treat this item as a capital gain, while defendant, on its subsequent proceedings in asserting and collecting the asserted deficiency, claimed that such item should be treated as ordinary income.

The testimony makes it absolutely clear that when the parties signed the final stipulation they were fully and completely aware of the tax consequences of labelling the $15,000 item a "covenant not to com-

pete." Plaintiff so admitted in the course of his testimony. However, he contends that although the item was actually labelled a "covenant not to compete," it was in truth and in fact the purchase and sale of good will and it should have been so treated by the Commissioner.

The plaintiff carries a heavy burden. The very purpose of reducing to writing an agreement between parties is to establish the terms, provisions and conditions of their agreement and their intentions with reference thereto. Historically, the courts found oral contracts quite unsatisfactory and at an early date established what we now know as the Parol Evidence rule. At or about the same time, the courts established the Best Evidence rule to prevent parties from testifying to the contents of an agreement which was in writing. Even these rules were found insufficient to control some of the unsavory practices which had grown up with the early common law and, as a result, Parliament passed the first Statute of Frauds which absolutely prevented evidence of certain agreements unless the same were in writing. The substance of this statute has been adopted by most, if not all, of the states, including Oregon.[1] Most states, including Oregon,[2] have statutes which prevent a party to an agreement from disputing the truth of the facts recited in a written instrument. True enough, the above statutes and rules of evidence would not prevent the plaintiff, where a third party is involved, such as here, from introducing evidence as to the true nature of the agreement. However, those rules point to a solid stamp of approval which the courts and the legislatures of the respective jurisdictions have placed on the sanctity of a written instrument.

It is a rule of law in this district that a partner may sell his good will in a partnership and, in a proper case, may receive capital gains treatment for tax purposes. Rees v. United States, D.C. Or., 1960, 187 F.Supp. 924, aff'd, 9 Cir. 1961, 295 F.2d 817. The evidence convinces me that plaintiff probably had good will to sell. On the other hand, the evidence convinces me that Clarke was vitally interested in securing from Yandell a covenant not to compete which would prevent competition by Yandell and, from a tax viewpoint, insisted on such a covenant. No one could listen to the testimony and analyze this record without arriving at the conclusion that the parties to the contract were negotiating at arm's length on a very important subject and that finally, the plaintiff, well knowing the probable tax consequences, agreed to receive the $15,000 as consideration for signing the covenant not to compete. In litigation between the parties to the agreement, the plaintiff would be absolutely prohibited from giving evidence contrary to the express provisions of the contract. ORS 41.740, ORS 41.350(3). Of course, these statutes must be read into and become part of the contract itself.

The Ninth Circuit has considered somewhat similar cases in Rogers v. United States, 9 Cir., 1961, 290 F.2d 501, and Schulz v. Commissioner, 9 Cir., 1961, 294 F.2d 52. Plaintiff relies on the Schulz case and claims that it modifies the effect of the earlier Rogers case. In Schulz one of the partners offered to sell his interest to the remaining partners for $111,000. On this partner's breakdown of the amount, $18,000 was for good will. The remaining partners made a counteroffer of $109,000, with $18,000 specifically set aside for a covenant not to compete. The evidence in that case

---

1. ORS 41.580.

2. ORS 41.350 "Conclusive presumptions. The following presumptions, and no others, are conclusive:

\*    \*    \*    \*    \*

"(3) The truth of the facts recited from the recital in a written instrument,

between the parties thereto, their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration. \* \* \*."

makes it clear that this designation was insisted on by the remaining partners because of the tax advantage. In that case the transaction was attacked by the Commissioner of Internal Revenue. The selling partner had no knowledge of the tax consequences, nor did he know that the money received on the covenant not to compete would be taxed as ordinary income. In my opinion, the most that can be said of the Schulz case is that the Commissioner, in a proper case, may go beyond the formal contract of the parties to see if the particular form reflects meaningful substance. Such a rule is elementary in tax law. Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Particelli v. Commissioner, 9 Cir., 1954, 212 F.2d 498. The court distinguishes Schulz from the earlier Rogers case by the use of the language in the margin.[3] Schulz is not in point.

The facts in the Rogers case are more closely related to the facts in this case. In that case, as in this, the taxpayer was attempting to circumvent a provision in the written contract which set aside a portion of the consideration for a covenant not to compete. In Rogers, as here, the parties segregated the covenant not to compete and the consideration in support of the covenant from the general sales price of the business. Under ordinary circumstances, a party to a contract should not be permitted to change, modify or contradict its terms or conditions. As was said in Rogers, "the taxpayers probably have been maneuvered by their purchaser into a big tax disadvantage." In that case, the court refused to go behind the contract which was the result of voluntary negotiations between the parties. Ordinarily, the creator of a plan does not have a right to disregard an arrangement which he has selected after due deliberation. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406; Gray

v. Powell, 314 U.S. 402, 414, 62 S.Ct. 326, 86 L.Ed. 301. A witness's testimony, such as Yandell's, in direct conflict with the provisions of a written instrument is of little weight. Flynn v. Crume, 7 Cir., 1939, 101 F.2d 661. On all of the evidence in the case, I find that the receipt by the plaintiffs of the sum of $15,000, mentioned in paragraph 6 of the pretrial order, was in payment to plaintiffs of a covenant not to compete and was not for the sale of a capital asset.

Other cases cited by respective counsel have received my consideration. These authorities are of no assistance in arriving at my conclusions. I have resolved the question of fact against plaintiffs.

The agreed facts as set forth in the pretrial order and my findings in this opinion shall stand as my findings of fact and conclusions of law. Judgment for defendant.

---

3. " * * * Admittedly, both courts relied heavily on the formal means which the parties used. However, there it was *the parties rather than the Commis-* *sioner* who sought to vary the formal instruments. * * *" (294 F.2d 56) (emphasis added)