Ray D. BATEMAN and Helen C. Bateman, Plaintiff-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Dow R. BATEMAN and Elaine C. Bateman, Plaintiff-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 71-2894, 71-2895.

United States Court of Appeals, Ninth Circuit.

Dec. 4, 1973.

Michael L. Paup (argued), U. S. Dept. of Justice—Fred B. Ugast, Acting Asst. Atty. Gen., Tax Div., Scott P. Crampton, Asst. Atty. Gen., and Meyer Rothwacks, U. S. Dept. of Justice, Washington, D. C., Lawrence W. Brooks, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellant.

C. E. Millikan, Jr. (argued), Millikan, Montgomery & Olafson, Pasadena, Cal., for plaintiffs-appellees.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and RENFREW,* District Judge.

## OPINION

RENFREW, District Judge:

The United States appeals from a decision permitting taxpayers recovery of additional taxes assessed and paid in two companion cases. The taxpayers transferred interests in a limited partnership to themselves as trustees for the benefit of their children and to a corporation owned solely by one of the taxpayers. The basic issue is whether income paid to the trusts and corporation may be taxed to these entities or should properly be considered income to the respective taxpayers. Having carefully considered the points raised by the government, we affirm.

Ray and Dow Bateman[1] were general partners in Bateman Brokerage Company (BBC), a California limited partnership. BBC is a food broker, representing and distributing the products of food processors and manufacturers. In the tax years in question, 1963, 1964 and 1965,[2] BBC employed between 38 and 40 persons, 10 of whom were general or limited partners, and had gross receipts averaging approximately $574,000 per year and annual income varying between $74,007 and $101,158. Both Ray and Dow Bateman were employees as well as partners, and the court found their salaries as employees to be reasonable.

Prior to the tax years in question, Ray and Dow Bateman both created trusts for the benefit of their children and Ray Bateman acquired, as sole owner, a corporate shell, Group Administrators, Inc. (GAI). The trusts and corporation were then assigned limited partnership interests in BBC and received partnership income. The government contends that the trusts were not real partners for tax purposes under the family partnership provisions of the Internal Revenue Code, 26 U.S.C. § 704(e), and further contends that the corporation was a sham and should be disregarded.

We first consider the trusts as partners. Section 704(e)(1), the family partnership section of the Code (26 U.S.C. § 704(e)(1)), provides:

"A person[3] shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor * * *."

BBC maintained its books on the cash basis method of accounting which did not reflect accounts receivable and good will owned by the partnership. Based upon prices paid by unrelated third parties for the purchase of partnership in-

---

* The Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

1. Reference to Ray Bateman and Dow Bateman as taxpayers includes their respective spouses.

2. Dow Bateman sought a refund only for the calendar year 1965.

3. Trusts are "persons" for the purposes of § 704(e)(1). See 26 C.F.R. § 1.704–1(e)(2) (vii).

terests, the court below found the good will of BBC to have a value of between $405,000 and $463,200 during the fiscal years ending 1963, 1964 and 1965. The court also found that the trusts and GAI were valid under California law, that each owned a capital interest in BBC during the relevant time period, and that capital was a material income-producing factor in BBC during that period.

■ The government challenges the court's finding on two grounds. First, it urges that the good will was personal to the taxpayers and merely represented the present value of their future earnings. Thus the good will of BBC was not capital within the meaning of 26 U.S.C. § 704(e)(1), and therefore any transfer of a partnership interest in BBC would be an anticipatory assignment of income condemned under Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). Second, it urges that the trusts were not partners since the taxpayers remained true owners of the partnership interests assigned to the trusts.

As to whether good will here belonged to BBC, we must accept the finding below unless we are persuaded that it was "clearly erroneous". Rule 52(a) of Federal Rules of Civil Procedure. We have reviewed the record below, including the reporter's transcript of the testimony of the witnesses, and are not so persuaded. Whether we would have reached the same conclusion were the matter tried to us is not the issue before us. It is not the function of an appellate court to review evidence *de novo*. Zenith Corp. v. Hazeltine, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). There was evidence of record to support the finding,[4] and it is not clearly erroneous as a matter of law.

■ ■ There is no question that for a non-family personal service partnership, good will may be treated as a capital asset. See 26 U.S.C. § 736(b)(2)(B); Rees v. United States, 187 F.Supp. 924 (D.Or.1960), affirmed per curiam, 295 F.2d 817 (9 Cir. 1961). The government urges, however, that good will should be treated differently in a personal service family partnership than in a personal service non-family partnership. Such a distinction has neither a basis in law nor in logic and we reject it. The government failed to point out any legislative history of the family partnership section (§ 704 (e)(1)), which supports its contention nor do we find any. Indeed, both § 704(e)(1) and the applicable regulations[5] indicate that by reference to all the facts of each case a personal service family partnership may have capital which is a material income-producing factor. Here, there was evidence of the value of the good will of BBC based upon unrelated third party purchases of partnership interests. In addition, the donor-taxpayers' salaries in the years in question were found to be

---

4. BBC was a substantial business entity. During the years in question, it had 8 limited partners other than the Batemans as well as 28 to 30 additional employees. The salaries paid to the Batemans were reasonable and were less than one-third of the amount of the salaries paid to other employees. Finally, the purchase of partnership interests by unrelated third parties supports the finding that the good will of BBC was not personal to the Batemans.

5. The regulations for the family partnership section provide:
   "For purposes of section 704(e)(1), *the determination as to whether capital is a material income-producing factor must be made by reference to all the facts of each case.*

Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business conducted by the partnership. In general, capital is not a material income-producing factor where the income of the business consists principally of fees, commissions, or other compensation for personal services performed by members or employees of the partnership. On the other hand, capital is ordinarily a material income-producing factor if the operation of the business requires substantial inventories or a substantial investment in plant, machinery, or other equipment." 26 C.F.R. § 1.704-1(e) (1)(iv). (emphasis supplied)

reasonable, a factor emphasized in the regulations and § 704(e)(2).[6] We agree with Judge Wright's dissent to the extent that had the good will been personal to the Batemans, the transfers of interest to the trusts would not have received tax recognition. Under those circumstances, without the very substantial good will owned by BBC, the partnership would not have been one in which capital was a material income-producing factor. However, under the facts here, the court below found that BBC owned substantial good will which in effect constituted a capital asset. Based upon these facts, it appears that the Batemans were not transferring personal income to the trusts. There being no basis for treating good will differently in family partnerships than in non-family partnerships, we find no error as a matter of law in the findings of the court below.

The government next contends that the donors were the true owners of the trusts and should be taxed on the trust income. This challenge is based on the Batemans' positions as donors, trustees, remaindermen and general partners. While the Batemans have gone to the brink of permissible control and ownership, they have not crossed it. Congress has established strict requirements for a valid limited duration trust. The Clifford Regulations (26 U.S.C. § 671 et seq.) provide a framework for proper trust procedure and the Batemans have stayed within it. The Bateman trusts prohibited the trustees from exercising any of the powers enumerated in § 675, which would cause them to be treated as owners.[7] The trustees were directed to exercise their powers in a fiduciary manner, as indeed they were already obligated to do as general partners in dealing with their limited partners. Cal.Corp.Code § 15509(1); Wind v. Herbert, 186 Cal.App.2d 276, 8 Cal. Rptr. 817 (1960); Nelson v. Abraham, 29 Cal.2d 745, 177 P.2d 931 (1947). The trusts' duration was longer than ten years. Not only were the trusts in question drafted within the permissible framework, but there was no evidence that in fact the Batemans acted outside it. The government contends that while there was no abuse here, there was potential, and therefore the trusts were invalid. However, in the absence of such abuse, the trusts must receive tax recognition.[8]

Ray Bateman's corporation, GAI, the owner of a 21 per cent limited partnership interest, presents a closer question than the trusts. The government contends that GAI was a sham. This is a very close question and were we a trial court, we would have been more sympathetic to the government's view. However, we may not substitute our judgment for that of the court below. The question whether a corporation is genuine or a sham is one of fact. Noonan v. C.I.R., 451 F.2d 992, 993 (9 Cir. 1971), Shaw Construction Company v. C.I.R., 323 F.2d 316, 321 (9 Cir. 1963), and we are limited here by the "clearly erroneous" rule. Ray Bateman testified that GAI was used to build up a cash reserve fund to buy out retiring or deceased partnership interests, not to avoid taxes, and the trial court so found. Even though the parties stipulated that

---

6. § 704(e)(2) provides:
   "In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital. The distributive share of a partner in the earnings of the partnership shall not be diminished because of absence due to military service."

7. The Dow Bateman trusts further prohibited the trustee from exercising any of the powers enumerated in Subpart E, Subchapter J (§ 671 et seq.) of the Code.

8. When such abuse is shown, a family trust loses its tax recognition. See Kuney v. Frank, 308 F.2d 719 (9 Cir. 1962).

other than passive investments, GAI operated no businesses,[9] and Bateman testified that he knew the tax bill would be smaller with the corporation, we are not left with a "definite and firm conviction that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Affirmed.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

I respectfully dissent. I would reverse the judgment of the district court and remand the case for further factual findings.

### I.

The district court found that the trusts were valid partners under Int. Rev.Code § 704(e), since the trusts owned "a capital interest in a partnership [Bateman Brokerage Co.] in which capital is a material income-producing factor." The district court relied in part on the partnership's good will, in the form of established client relationships, to support its finding that capital was a material income-producing factor. I would hold that good will in the form of established client relationships is capital for the purposes of § 704(e) only to the extent that it is associated with the business itself and not merely with particular partners individually.

The test that should be applied is whether the good will would remain with the business or follow the individual partner if the partner withdrew from the business and competed with it. Since the district court did not apply this test or make findings of fact that would allow this court to do so, the case should be remanded for a further factual determination.

The majority relies on Rees v. United States, 187 F.Supp. 924 (D.Or.1960),

aff'd per curiam, 295 F.2d 817 (9th Cir. 1961), in rejecting the distinction between good will associated with the business itself and good will associated with individual partners. In Rees, a dentist with profitable client relationships sold a partnership interest in his practice. The court permitted the dentist to treat proceeds from the sale of his good will as capital gain.

Good will would normally follow a dentist who withdrew from a partnership and competed in a nearby location. Under the test that I have proposed, a dentist's good will would not normally be capital for the purposes of § 704(e), yet the Rees court held that the sale of a dentist's good will was a sale of a capital asset. Therefore, it appears that the proposed test is inconsistent with our holding in Rees.

Rees, however, considered whether the proceeds from the sale of personal good will are capital gain or ordinary income. Section 704(e) deals with the ability of taxpayers to spread income and avoid progressive tax rates. These are very different problems, and the meaning of "capital·interest" in this case must be determined with reference to the background and purpose of § 704(e).

Income spreading among family members to avoid progressive tax rates has received considerable judicial attention. In order to restrict the ability of taxpayers routinely to avoid progressive taxation through family income splitting without penalizing bona fide gifts, the Supreme Court developed the distinction between gifts of income itself and gifts of income-producing property. Although a gift of the right to receive income does not shift the tax burden from the person who earns the income, Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75

9. The general rule is that to be a separate, taxable entity, a corporation must engage in some substantial business activity. Noonan v. C.I.R., 451 F.2d 992 (9 Cir. 1971); National Investors Corporation v. Hoey, 144 F. 2d 466 (2 Cir. 1944); Moline Properties v. Comm'r, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943).

(1940), a gift of income-producing property does shift the tax burden to the donee, Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937).

Since they are attractive devices for spreading income to family members, family partnerships were subjected to special scrutiny by the Supreme Court even where the donated partnership interests were clearly capital in nature. Following the Supreme Court's decision in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946), it was widely believed "that one whose capital interest in a partnership was acquired as a gift, or as the result of the contribution of property acquired as a gift, from a relative who controlled the business would not, in the absence of a participation in the management and control of the business or the performance of other vital services, be recognized as a partner." Mertens, Law of Federal Income Taxation, Code Commentary § 704.10, p. 33; *see e. g.*, Edwin F. Sandberg, 8 T.C. 423 (1947). The implications of *Tower* were mitigated somewhat by Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949), which held that the "vital services" and "original capital" tests were merely indicative rather than conclusive. But even after *Culbertson,* gifts of capital partnership interests to family members were presumptively ineffective for tax purposes.

In the wake of *Culbertson* and *Tower,* Congress passed the predecessor of § 704(e). Its purpose was "to insure that the income properly attributable to a capital interest in a partnership acquired as a gift would be taxed to the donee if he were the real owner of such interest regardless of the motive prompting the transfer to him and regardless of whether or not the business benefited from his participation in its profits." Mertens, Law of Federal Taxation, Code Commentary § 704.10, p. 33; *see* H.Rep.No.586, 82d Cong. 1st Sess., p.

34. Thus, § 704(e) overruled the "special services" and "original capital" rules that *Tower* and *Culbertson* had established for partnership interests, admittedly capital in nature, that were donated to family members.

Nothing in the history of § 704(e), however, indicates that the standards of Lucas v. Earl, Helvering v. Horst, and Commissioner v. Blair, were no longer applicable for determining, for the purposes of income spreading, whether a capital interest had in fact been transferred. Indeed, the principles of those cases were explicitly approved by the authors of § 704(e):

> Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. *There is no reason for applying different principles to partnership income.* H.Rep. No.586, 82d Cong., 1st Sess., 1951–2 C.B. 357 quoted in Harry L. Bialock, 35 T.C. 649, 657 n. 3 (1961). [Emphasis added.]

The two principles referred to in the House Report are derived from Lucas v. Earl, Helvering v. Horst, and Commissioner v. Blair. Thus, it is clear that the drafters of § 704(e) did not intend to overrule those cases, but rather that they merely intended to overrule *Tower* and *Culbertson.*

An examination of Lucas v. Earl reveals that income cannot be spread simply because it is generated in part by personal good will. In that case, an attorney attempted to spread half of his income to his wife through an agreement whereby each was to share equally in the income of the other. Certainly the attorney benefited from the same sort of personal good will and client relationships that were found to be a capital interest in *Rees.* Nevertheless, the taxpayer was prohibited from spreading

the income to his wife. By extending *Rees* to the family income spreading situation and thereby holding that personal good will can be a "capital interest" under § 704(e), the majority permits the very type of income spreading that was condemned in Lucas v. Earl.

The conclusion that personal good will is not a "capital interest" under § 704(e) is also supported by two of the Commissioner's regulations. Treas.Reg. § 1.704–1(e)(1)(iv) provides:

> For purposes of § 704(e)(1), the determination as to whether capital is a material income-producing factor must be made by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business conducted by the partnership. *In general, capital is not a material income-producing factor where the income of the business consists principally of fees, commissions, or other compensation for personal services performed by members or employees of the partnership.* On the other hand, capital is ordinarily a material income-producing factor if the operation of the business requires substantial inventories or a principal investment in plant, machinery, or other equipment. [Emphasis added.]

The income of Bateman Brokerage Co. "consists principally of fees, commissions, or other compensation for personal services performed by members or employees of the partnership." Under Treas.Reg. § 1.704–1(e)(1)(iv), therefore, Bateman Brokerage Co. is the type of business that, "in general," does not have capital as a material income-producing factor under § 704(e). I would hold that good will excepts a personal service company from the "general" rule of Treas.Reg. § 1.704–1(e)(1)(iv) only when the personal service company has substantial good will that is associated with the company itself.

In addition, Treas.Reg. § 1.704–1(e)(1)(v) provides:

> For the purposes of § 704(e), a capital interest in a partnership means an interest in the assets of the partnership, which is distributable to the owner of the capital interest upon his withdrawal from the partnership or upon liquidation of the partnership. The mere right to participate in the earnings and profits of a partnership is not a capital interest in the partnership.

Good will associated with the company itself can be captured upon dissolution of the partnership, if the business remains intact, by any of the dissolving partners who choose to continue their participation in the business. Personal good will, however, can be captured only by the individual partners with whom it is associated.

Of course, it is desirable that terms of art are used with a uniform meaning throughout the Internal Revenue Code. That personal good will was held to be capital in *Rees* is a persuasive reason to hold that it is capital under other provisions of the Code. To hold that personal good will is capital for the purpose of § 704(e), however, would be inconsistent with Lucas v. Earl. We should define capital under § 704(e) in a way that is consistent with the Supreme Court's decision in Lucas v. Earl rather than with our own decision in *Rees*.

Good will should be defined as a "capital interest" for the purposes of § 704(e) only to the extent that it is associated with the business itself rather than merely with individual partners. I would reverse the judgment of the district court and remand for a factual determination according to this standard.

## II.

The district court also found that Group Administrators, Inc. was a valid partner of Bateman Brokerage Co. and that the income of the corporation's

partnership interest was attributable to the corporation rather than to the taxpayers.

Corporate ownership of partnership interests need not be recognized for tax purposes if the corporation is a sham created by the purpose of tax avoidance. Noonan v. Commissioner, 451 F.2d 992 (9th Cir. 1971); Shaw Construction Co. v. Commissioner, 323 F.2d 316 (9th Cir. 1963). Whether a corporation is created for a legitimate business purpose or is a sham is a finding of fact that may be reversed only if "clearly erroneous" under F.R.Civ.P. 52. *Id.*

The district court found that Group Administrators, Inc. was created for a legitimate business purpose: the creation of a reserve fund from which the partnership interests of withdrawing partners could be purchased to ensure continuity for the partnership. The creation of such a reserve fund is a legitimate business purpose, but the fund can easily be created within partnership funds or within the personal funds of one of the partners. The taxpayers offer no business purpose to explain why the fund was created under the shell of a separate corporation. Although the reserve fund had a legitimate business purpose, the use of a separate corporation to establish the fund had no purpose other than tax avoidance.

If the purpose of the reserve fund itself can serve as the legitimate business purpose for the use of the corporate form, a partnership can spread its income into as many corporations as it has reserve funds to create. I would require the taxpayers to provide a legitimate business purpose for creating the reserve fund under the shell of a separate corporation rather than creating the reserve fund within the partnership or within the personal funds of one of the partners. The taxpayers provided no such legitimate business purpose. Therefore, I would reverse, as "clearly erroneous," the district court's finding that Group Administrators, Inc. was a valid partner for tax purposes.