Argued June 5, affirmed October 11, 1973

# TIMBERLINE EQUIPMENT COMPANY, INC., *Respondent, v.* DAVENPORT ET AL, *Defendants,* BENNETT, *Appellant.*

514 P2d 1109

*Gerald R. Pullen,* Portland, argued the cause for appellant. With him on the brief was Robert R. Lohman, West Linn.

*Stanley R. Loeb,* Portland, argued the cause for respondent. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, Portland.

DENECKE, J.

Plaintiff brought this action for equipment rentals against the defendant Dr. Bennett and two others. In addition to making a general denial, Dr. Bennett alleged as a defense that the rentals were to a de facto corporation, Aero-Fabb Corp., of which Dr. Bennett was an incorporator, director and shareholder. He also alleged plaintiff was estopped from denying the corporate character of the organization to whom plaintiff

rented the equipment. The trial court held for plaintiff. Dr. Bennett, only, appeals.

On January 22, 1970, Dr. Bennett signed articles of incorporation for Aero-Fabb Co. The original articles were not in accord with the statutes and, therefore, no certificate of incorporation was issued for the corporation until June 12, 1970, after new articles were filed. The leases were entered into and rentals earned during the period between January 22nd and June 12th.

Prior to 1953 Oregon had adopted the common-law doctrine that prohibited a collateral attack on the legality of a defectively organized corporation which had achieved the status of a de facto corporation. See, for example, *Marsters v. Umpqua Oil Co.,* 49 Or 374, 377, 90 P 151, 12 LRA (ns) 825 (1907).

In 1953 the legislature adopted the Oregon Business Corporation Act. Oregon Laws 1953, ch 549. The Model Business Corporation Act was used as a working model for the Oregon Act. 1952 Oregon State Bar Committee Reports, p 5.

ORS 57.321 of the Oregon Business Corporation Act provides:

> "Upon the issuance of the certificate of incorporation, the corporate existence shall begin, and such certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under the Oregon Business Corporation Act, except as against this state in a proceeding to cancel or revoke the certificate of incorporation or for involuntary dissolution of the corporation."

This section is virtually identical to § 56 of the Model Act. The Comment to the Model, prepared as a

research project by the American Bar Foundation and edited by the American Bar Association Committee on Corporate Laws, states:

"Under the Model Act, de jure incorporation is complete upon the issuance of the certificate of incorporation, except as against the state in certain proceedings challenging the corporate existence. In this respect, the Model Act provisions are the same as those in many states, although in a number of them some further action is required before the corporation has legal existence, such as local filing or recording or publication.

"Under the unequivocal provisions of the Model Act, any steps short of securing a certificate of incorporation would not constitute apparent compliance. Therefore a de facto corporation cannot exist under the Model Act.

"Like provisions are made throughout the Model Act in respect of the conclusiveness of the issuance by the secretary of state of the appropriate certificate in connection with filings made in his office. * * *.

"In some states, however, issuance of the certificate of incorporation and compliance with any additional requirements for filing, recording or publication is not conclusive evidence of incorporation. In those states, such action is stated to be only prima facie evidence of incorporation, and in others the effect is merely one of estoppel preventing any question of due incorporation being raised in legal actions by or against the corporation." 2 Model Business Corporation Act Annotated § 56, p 205 (2d ed 1971).

ORS 57.793 provides:

"All persons who assume to act as a corporation without the authority of a certificate of incorporation issued by the Corporation Commissioner, shall be jointly and severally liable for all

debts and liabilities incurred or arising as a result thereof."

This is merely an elaboration of § 146 of the Model Act. The Comment states:

"This section is designed to prohibit the application of any theory of de facto incorporation. The only authority to act as a corporation under the Model Act arises from completion of the procedures prescribed in sections 53 to 55 inclusive. The consequences of those procedures are specified in section 56 as being the creation of a corporation. No other means being authorized, the effect of section 146 is to negate the possibility of a de facto corporation.

"Abolition of the concept of de facto incorporation, which at best was fuzzy, is a sound result. No reason exists for its continuance under general corporate laws, where the process of acquiring de jure incorporation is both simple and clear. The vestigial appendage should be removed." 2 Model Business Corporation Act Annotated § 146, pp 908-909 (2d ed 1971).

In *Robertson v. Levy,* 197 A2d 443 (DC Ct of App 1964), the court held the president of a defectively organized corporation personally liable to a creditor of the "corporation." The applicable legislation was similar to Oregon's. The court held the legislation ended the common-law doctrine of de facto corporation.

The Alaska court upheld the cancellation of a special land-use permit upon the ground that the applicant had not yet been issued its certificate of incorporation at the time the permit was issued. *Swindel v. Kelly,* 499 P2d 291 (Alaska 1972). Alaska has a statute similar to Oregon's. The court commented: "The concept of de facto corporations has been in-

creasingly disfavored and Alaska is among the states whose corporation statutes are designed to eliminate the concept." 499 P2d at 299, n 28.

*Vincent Drug Co. v. Utah State Tax Com'n.,* 17 Utah2d 202, 407 P2d 683 (1965), cited by defendant, involved a statute similar to that of Oregon; however, the court held the de facto corporation doctrine continued to exist. No reasoning is stated and we find the case unpersuasive.

■ We hold the principle of de facto corporation no longer exists in Oregon.

The defendant also contends that the plaintiff is estopped to deny that it contracted with a corporation.[①]

The doctrine of "corporation by estoppel" has been recognized by this court but never fully dissected. *Rutherford v. Hill,* 22 Or 218, 29 P 546, 29 Am St R 596, 17 LRA 549 (1892); *Nickum v. Burckhardt,* 30 Or 464, 468, 47 P 888, 60 Am St Rep 822 (1897); *Thompson Optical Institute v. Thompson,* 119 Or 252, 260, 237 P 965 (1925); *Doehler v. Lansdon,* 135 Or 687, 696, 291 P

---

[①] Robertson v. Levy, supra (197 A2d 443), held the adoption of the provisions of the Model Business Corporation Act eliminated the concept of corporations by estoppel as well as de facto corporations. Fletcher follows this view. Fletcher, supra, § 3890. However, the same court that decided Robertson v. Levy, with the same panel, held a party was estopped to deny the existence of the corporation. Namerdy v. Generalcar, 217 A2d 109 (DC Ct of App 1966). Robertson v. Levy was not mentioned.

In view of our decision that the defense of estoppel was not established, we do not need to decide the effect of the new Business Corporation Act on the doctrine of estoppel. We observe, however, that "[a]lthough some cases tend to assimilate the doctrines of incorporation *de facto* and by estoppel, each is a distinct theory and they are not dependent on one another in their application." Cranson v. International Business Machine Corp., 234 Md 477, 200 A2d 33, 38 (1964).

392, 298 P 200 (1931); *Brandtjen & Kluge v. Biggs,* 205 Or 473, 482-483, 288 P2d 1025 (1955). Corporation by estoppel is a difficult concept to grasp and courts and writers have "gone all over the lot" in attempting to define and apply the doctrine. One of the better explanations of the problem and the varied solutions is contained in Ballantine, Manual of Corporation Law and Practice §§ 28-30 (1930):

> "The so-called estoppel that arises to deny corporate capacity does not depend on the presence of the technical elements of equitable estoppel, viz., misrepresentations and change of position in reliance thereon, but on the nature of the relations contemplated, that one who has recognized the organization as a corporation in business dealings should not be allowed to quibble or raise immaterial issues on matters which do not concern him in the slightest degree or affect his substantial rights." Ballantine, supra, at 92.

As several writers have pointed out, in order to apply the doctrine correctly, the cases must be classified according to who is being charged with estoppel. Ballantine, supra, at 91; 1 Hornstein, Corporation Law and Practice § 30, p 31, n 6 (1959).

When a defendant seeks to escape liability to a corporation plaintiff by contending that the plaintiff is not a lawful corporate entity, courts readily apply the doctrine of corporation by estoppel. *Thompson Optical Institute v. Thompson,* supra (119 Or 252), well illustrates the equity of the doctrine in this class of cases. R. A. Thompson carried on an optical business for years. He then organized a corporation to buy his optical business and subscribed to most of the stock in this corporation. He chaired the first meeting at which the Board resolved to purchase the business from him. The corporation and Thompson en-

tered into a contract for the sale of the business which included a covenant by Thompson not to compete. Thereafter, Thompson sold all of his stock to another individual. Some years later Thompson re-entered the optical business in violation of the covenant not to compete. The corporation brought suit to restrain Thompson from competing. Thompson defended upon the ground that the corporation had not been legally organized. We held, "The defendant cannot be heard to challenge the validity of the contract or the proper organization of the corporation."[2] 119 Or at 260.

The fairness of estopping a defendant such as Thompson from denying the corporate existence of his creation is apparent.

On the other hand, when individuals such as the defendants in this case seek to escape liability by contending that the debtor is a corporation, Aero-Fabb Co., rather than the individual who purported to act as a corporation, the courts are more reluctant to estop the plaintiff from attacking the legality of the alleged debtor corporation. Ballantine, supra, at 96; 8 Fletcher, Cyclopedia of the Law of Private Corporations (perm ed) § 3914, p 228.

The most appealing explanation of why the plaintiff may be estopped is based upon the intention of the parties. The creditor-plaintiff contracted believing it could look for payment only to the corporate entity. The associates, whatever their relationship to the supposed corporate entity, believed their only potential liability was the loss of their investment in the supposed corporate entity and that they were not personally liable. *Cranson v. International Business*

---

[2] The court also based its decision upon a finding that the plaintiff was a de facto corporation.

*Machine Corp.,* 234 Md 477, 200 A2d 33, 38-39 (1964);
*Namerdy v. Generalcar,* 217 A2d 109 (DC Ct of App
1966); E. Merrick Dodd, Jr., *Partnership Liability of
Stockholders in Defective Corporations,* 40 Harv L
Rev 521, 552 (1927).

From the plaintiff-creditor's viewpoint, such rea-
soning is somewhat tenuous. The creditor did nothing
to create the appearance that the debtor was a legal
corporate entity. The creditor formed its intention to
contract with a debtor corporate entity because some-
one associated with the debtor represented, expressly
or impliedly, that the debtor was a legal corporate
entity.

■ We need not decide whether the doctrine of
corporation by estoppel would apply in such a case
as this. The trial court found that if this doctrine was
still available under the Business Corporation Act de-
fendants did not prove all the elements necessary for
its application, and, moreover, it would be inequitable
to apply the doctrine.[9]

Under the explanation stated above for the ap-
plication of the doctrine of estoppel in this kind of
case, it is necessary that the plaintiff believe that it was
contracting with a corporate entity. The evidence on
this point is contradictory and the trial court ap-
parently found against defendants.

The trial court found, and its findings are sup-
ported by the evidence, that all the defendants were
partners prior to January 1970 and did business under
the name "Aero-Fabb Co." Not until June 1970 were
the interests in this partnership assigned to the corpo-
ration "Aero-Fabb Co." and about the same time the

---

[9] The trial court made these as conclusions of law, but these
statements are in effect general findings of fact.

assumed business name "Aero-Fabb Co." was cancelled.

The trial court found, and the evidence supported the finding, that two of the leases entered into by plaintiff were with "Kenneth L. Davenport, dba Aero-Fabb Co." The other was with "Kenneth L. Davenport, dba Aero-Fabb Corp." "Aero-Fabb Corp." was never the corporate name; the name of the corporation for which a certificate was finally issued was "Aero-Fabb Co." The correspondence and records of plaintiff sometimes referred to the debtor as "Aero-Fabb Co." and others as "Aero-Fabb Corp."

Plaintiff's bookkeeper testified that she thought it was a corporation because, "This was the way the information was given to me." It is uncertain whether the information was given to her by someone employed by plaintiff or by a company with whom she made a credit check. In any event, plaintiff's salesman said Mr. Davenport, speaking for the organization, stated several times that he was in a partnership with Drs. Gorman and Bennett. The salesman was dubious and checked the title to the land on which the debtors' operation was being conducted and found it was in the name of the three defendants as individuals.

A final question remains: Can the plaintiff recover against Dr. Bennett individually?

In the first third of this century the liability of persons associated with defectively organized corporations was a controversial and well-documented legal issue. The orthodox view was that if an organization had not achieved de facto status and the plaintiff was not estopped to attack the validity of the corporate status of the corporation, all shareholders were liable as partners. This court, however, rejected the orthodox

rule. In *Rutherford v. Hill,* supra (22 Or 218), we held that a person could not be held liable as a partner merely because he signed the articles of incorporation though the corporation was so defectively formed as to fall short of de facto status. The court stated that under this rule a mere passive stockholder would not be held liable as a partner. We went on to observe, however, that if the party actively participated in the business he might be held liable as a partner.

This controversy subsided 30 or 40 years ago probably because the procedure to achieve de jure corporate status was made simpler; so the problem did not arise.

The Model Act and the Oregon Business Corporation Act, ORS 57.793, solve the problem as follows:

"All persons who assume to act as a corporation without the authority of a certificate of incorporation issued by the Corporation Commissioner, shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

We have found no decisions, comments to the Model Act, or literature attempting to explain the intent of this section.

We find the language ambiguous. Liability is imposed on "[a]ll persons who assume to act as a corporation." Such persons shall be liable "for all debts and liabilities incurred or arising as a result thereof."

We conclude that the category of "persons who assume to act as a corporation" does not include those whose only connection with the organization is as an investor. On the other hand, the restriction of liability

to those who personally incurred the obligation sued upon cannot .be based upon logic or the realities of business practice. When several people carry on the activities of a defectively organized corporation, chance frequently will dictate which of the several active principals directly incurs a certain obligation or whether an employee, rather than an active principal, personally incurs the obligation.

■ We are of the opinion that the phrase, "persons who assume to act as a corporation" should be interpreted to include those persons who have an investment in the organization and who actively participate in the policy and operational decisions of the organization. Liability should not necessarily be restricted to the person who personally incurred the obligation.

The trial court found that Dr. Bennett "acted in the business venture which was subsequently incorporated on June 12, 1970."

The proposed business of the corporation which was to be formed was to sell airplanes, recondition airplanes and give flying lessons. Land was leased for this purpose. Equipment was rented from plaintiff to level and clear for access and for other construction.

■ There is evidence from which the trial court could have found that while Drs. Bennett and Gorman, another defendant, entrusted the details of management to Davenport, they endeavored to and did retain some control over his management. All checks required one of their signatures. Dr. Bennett frequently visited the site and observed the activity and the presence of the equipment rented by plaintiff. He met with the organization's employees to discuss the operation of the business. Shortly after the equipment was rented and before most of the rent had accrued, Dr.

Bennett was informed of the rentals and given an opinion that they were unnecessary and ill-advised. Drs. Bennett and Gorman thought they had Davenport and his management "under control."

This evidence all supports the finding that Dr. Bennett was a person who assumed to act for the organization and the conclusion of the trial court that Dr. Bennett is personally liable.

Affirmed.