461 So.2d 761 (1984)
Sarah D. FLANAGAN, et al.
v.
JACKSON WHOLESALE BUILDING SUPPLY COMPANY.
No. 55220.
Supreme Court of Mississippi.
December 19, 1984.
*762 Luke Dove, Jackson, for appellants.
Lem Adams, III, Brandon, for appellee.
Before WALKER, P.J., and BOWLING and PRATHER, JJ.
PRATHER, Justice, for the Court:
This appeal originated as a suit by Jackson Wholesale Building & Supply Co. against Sarah Flanagan, individually; Sarah Flanagan, as Administratrix of the Estate of Robert Flanagan; and Flanagan Construction Co., Inc. for the recovery of indebtedness on an open account. The Circuit Court of Madison County, R.L. Goza presiding, entered judgment against Sarah Flanagan for the sum of $16,819.62 plus interest. Flanagan appeals, assigning as error:
(1) The circuit court erred in failing to transfer the cause to chancery court;
(2) The lower court erred in failing to sustain the motion for a directed verdict on behalf of the appellant; and
(3) The lower court erred in granting instructions submitted by the appellee and denying instructions submitted by the appellants.
From 1969 until his death in January of 1981, Bob Flanagan, the husband of appellant Sarah Flanagan, operated a home building and remodeling business. In 1974, Mr. Flanagan incorporated his business as Flanagan Construction Co., Inc. Mrs. Flanagan, as well as her husband, signed the certificate of incorporation as an incorporator. Mrs. Flanagan was also named in the certificate, along with her husband and her husband's attorney, as one of the directors of the corporation.
Flanagan Construction Co. maintained a corporate bank account at First National Bank of Jackson. Mrs. Flanagan and her husband were both listed on bank records as persons authorized to sign checks on the corporate account (R. 36). Mr. Flanagan used the corporate bank account for both business and personal expenses. Mrs. Flanagan maintained personal bank accounts at Mississippi Bank in Jackson and at the Bank of New Albany.
Mrs. Flanagan did not write any checks on the corporate account prior to December 31, 1980, when Mr. Flanagan was hospitalized with his final illness. Mr. Flanagan, however, regularly drew checks on the corporate account to pay Mrs. Flanagan's personal and household expenses. Mr. Flanagan also drew checks on the corporate account to pay the food and gas expenses of his daughter, Elisa, while she was in college. On several occasions, Mrs. Flanagan made loans to her husband by writing checks on her personal account to "cash", which were in turn deposited in the corporate account by her husband.
*763 The office of Flanagan Construction Co. was located in a room off of the garage of the Flanagan home, which was titled in Sarah Flanagan's name. The home phone was also the business phone and Mrs. Flanagan often took bid offers and business messages over the phone for her husband. Mrs. Flanagan also typed her husband's business contracts. Mrs. Flanagan, however, never drafted any contracts, never negotiated any contracts, never computed bids, never supervised labor and never ordered any building materials.
Around September, 1979, Mrs. Flanagan purchased a pickup truck for her husband because he needed it for his work. Though title to the truck remained in her name, Mrs. Flanagan never used the truck.
Flanagan Construction Co. maintained an open account with Jackson Wholesale Building & Supply Co. Building materials ordered on this account were delivered either to the Flanagan home or to the construction job sites. On two occasions during the Fall of 1980, Mrs. Flanagan went to Jackson Wholesale and personally picked up materials. According to T.E. Guillot, the general contractor who worked with Bob Flanagan, Mr. Flanagan took some left over material from a job site at 748 N. President Street, Jackson, stating he was going to use them in building a carriage house behind his home. Jackson Wholesale records indicate that Jackson Wholesale furnished the building materials for the Flanagan Construction Co. project at 748 N. President Street.
On December 5, 1978, Flanagan Construction Co. was suspended by the Secretary of State for failure to file an annual report. The first unpaid invoice from Jackson Wholesale was dated October 27, 1980. The parties stipulated that the amount of the unpaid invoices on the Flanagan Construction Co. account totalled $11,332.92. Service charges on the unpaid balance brought the total to $16,819.62 at the time of the trial.
John David Glen, Vice President and General Manager of Jackson Wholesale, spoke with Mrs. Flanagan about the account shortly after her husband's death in January, 1981. According to Mr. Glen, Mrs. Flanagan personally guaranteed payment of the account. According to Mrs. Flanagan, no personal guarantee of payment was made to Mr. Glen, verbally or in writing.

II.

WAS THE TRIAL COURT IN ERROR IN OVERRULING THE MOTION FOR A DIRECTED VERDICT ON BEHALF OF THE APPELLANT?
Appellant's primary assignment of error is that the trial court erred in failing to direct a verdict on behalf of Sarah Flanagan, individually. Appellant's contention is that Mrs. Flanagan is beyond the reach of Miss. Code Ann. § 79-3-285 (1972) which provides as follows:
All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.
The question presented is whether Mrs. Flanagan was a "person assuming to act as a corporation" within the meaning of the statute, so as to render her liable for "corporate" debts incurred after the suspension of Flanagan Construction Company's charter in 1974.
Carolina Transformer Co., Inc. v. Anderson, 341 So.2d 1327 (Miss. 1977) is the only Mississippi case construing section 79-3-285. The appellee in that case was the owner of a domestic corporation, Tranco Electric Supply Co., Inc., that was suspended by the Secretary of State for failure to file its annual report. Following the suspension, the appellee continued to operate the business in the corporate name and obtained from Carolina Transformer Co. products to be sold on consignment by Tranco. When the Tranco account became delinquent, Carolina Transformer sued the appellant and the corporation. The circuit court awarded a judgment against the corporation but exonerated the appellee as an individual. On appeal, this Court reversed, *764 holding that the appellee, by placing orders for additional products subsequent to the suspension of the corporation, came within the purview of section 79-3-285. Accordingly, this Court held the individual appellee personally liable on the "corporate" account, stating:
Upon suspension or its charter, Tranco, under § 79-3-189, was without "any right to exercise powers" granted it by the state. By virtue of the suspension, § 79-3-285 became operative so that any person (including its president, appellee Anderson) who would assume to act as the corporation, as Anderson did here, was "without authority so to do." Therefore, as provided in § 79-3-285, he was "liable for all debts ... arising as a result thereof."
Carolina Transformer is distinguishable from the case sub judice in that the owner and officer of the defunct corporation personally placed the order for the products upon which suit was brought. In the case sub judice, there is no evidence that Mrs. Flanagan ever ordered any materials from Jackson Wholesale.
Jurisdictions with similar statutes have recognized that some limitation on personal liability is necessary. In Mobile Oil Corp. v. Thoss, 385 So.2d 726 (Fla.Ct.App. 1980), the Florida Court stated the following with respect to its statute which is identical to § 79-3-285:
We think that the intent of these statutes is to impose personal liability upon those directors, officers, or agents who have control of the operation of the business and management over the actions in question. However, we do not think the Legislature intended to impose liability on every director or agent of a dissolved corporation who does not act or who has no knowledge of the dissolution.
385 So.2d at 727.
In Timberline Equipment Co. Inc. v. Davenport, 267 Or. 64, 514 P.2d 1109 (1973), the Oregon Supreme Court considered its statute which is identical to the one in Mississippi and stated:
We conclude that the category of "persons who assume to act as a corporation" does not include those whose only connection with the organization is as an investor. On the other hand, the restriction of liability to those who personally incurred the obligation sued upon cannot be based upon logic or the realities of business practice. When several people carry on the activities of a defectively organized corporation, chance frequently will dictate which of the several active principals directly incurs a certain obligation or whether an employee, rather than an active principal, personally incurs the obligation.
We are of the opinion that the phrase, "persons who assume to act as a corporation" should be interpreted to include those persons who have an investment in the organization and who actively participate in the policy and operational decisions of the organization. Liability should not necessarily be restricted to the person who personally incurred the obligation.
514 P.2d at 1113-1114.
This Court adopts the same interpretation of the phrase "persons who assume to act as a corporation." In this case, it is undisputed that Sarah Flanagan signed the certification of incorporation for Flanagan Construction Co. and was listed as one of the corporation's original directors. It is also undisputed that Mrs. Flanagan regularly received funds from the corporate account for her personal and household expenses. Moreover, Mrs. Flanagan made several cash loans to her husband which, in effect, went to the benefit of the corporation. Mrs. Flanagan performed services for the corporation by taking bids over the phone and typing up the corporate contracts. Mrs. Flanagan also provided the corporation, through her husband, with a business vehicle.
On the other hand, Mrs. Flanagan, unlike the corporate director in Carolina Transformer, supra, did not personally incur the obligation presently sued upon. Nor can it be said that Mrs. Flanagan had "control of *765 the operation of the business and management over the actions and questions," Mobile Oil, supra, or that she "actively participated in the policy and operational decisions of the organization." Timberline, supra.
The liability for corporate debt imposed by the provisions of § 79-3-285 should be limited to those officers and directors who are actively involved in the control and management of the corporation. While the evidence in the case sub judice clearly establishes that Flanagan Construction Co. and its finances were intertwined with the Flanagan household, there was no proof that Sarah Flanagan exercised control and management over the corporation. Therefore, the trial court erred in failing to direct a verdict on behalf of Sarah Flanagan, individually.

III.
Having addressed the failure to grant a verdict in the affirmative, this Court finds it unnecessary to discuss the remaining assignments of error.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.