Corrections to this opinion/decision not affecting the outcome, at the Court's discretion, can occur up to the time of publication with NM Compilation Commission. The Court will ensure that the electronic version of this opinion/decision is updated accordingly in Odyssey.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **March 31, 2022**

**No. A-1-CA-38317**

**GABRIEL M. VIGIL and ELAUTERIO VIGIL,**

Protestants-Appellants,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

Respondent-Appellee,

**IN THE MATTER OF THE PROTEST TO ASSESSMENT ISSUED ON MARCH 14, 2018.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Sanchez, Mowrer & Desiderio, P.C.
Robert J. Desiderio
Albuquerque, NM

Anthony B. Jeffries
Albuquerque, NM

for Appellants

Hector H. Balderas, Attorney General
Cordelia Friedman, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**WRAY, Judge.**

**{1}** Taxpayers Elauterio Vigil and Gabriel Vigil[1] appeal the assessments of taxes for tax years 2008, 2009, 2010, and 2011, arising from the operation of Prestige Towing & Recovery, Inc. (Prestige). The administrative hearing officer (Hearing Officer) determined that the ten-year statute of limitation applied to the assessments, based on a finding that Taxpayers filed fraudulent returns. *See* NMSA 1978, § 7-1-18(B) (2021).[2] The Hearing Officer additionally concluded that the New Mexico Taxation and Revenue Department (the Department) was not precluded from personally assessing taxes against Taxpayers for their operation of Prestige by the Department's earlier proceeding against a related, later-formed entity, Platinum Performance, LLC (Platinum).

**{2}** Taxpayers appeal. We reverse in part, and hold that (1) the seven-year limitation period applies to bar the Department from assessing gross receipts tax liability against Elauterio and Gabriel personally for 2008, 2009, and 2010; (2) estoppel principles do not preclude the Department from assessing Prestige's liability against Elauterio and Gabriel for 2011; and (3) contrary to Taxpayers'

---

[1]Because of the common surname, we refer to individuals by their first names or as Taxpayers.

[2]The 2021 amendments to Section 7-1-18 do not impact the issues raised by this appeal, so we cite the current version of the statute.

argument, the Hearing Officer properly assessed liability against Elauterio for his actions related to Prestige.

**BACKGROUND**

**{3}** In 1997, Gabriel decided to establish his own automotive technician business, Prestige. On October 24, 1997, Prestige received a certificate of incorporation from the state regulatory agency. Prestige's 1997 articles of incorporation identify Elauterio and Gabriel as directors and incorporators. Elauterio, Gabriel's father, provided significant financial support and helped to construct the building that housed Prestige.

**{4}** Prestige reported gross receipts taxes sporadically between January 2000 and December 2004. In 2007, Prestige submitted to the Public Regulation Commission (PRC) biennial reports for the years ending December 31, 2004, and December 31, 2006. On April 5, 2007, Prestige received notice from the PRC that the biennial reports required corrections. The parties dispute whether Prestige corrected the errors, but regardless, the PRC issued a certificate of cancellation of corporate status on August 7, 2007, which Prestige claims it did not receive.

**{5}** On September 21, 2011, the PRC issued a second certificate of incorporation to Prestige. The 2011 certificate of incorporation showed a different corporation number and listed only Gabriel as an incorporator and director. In 2011, Prestige began to file late corporate tax returns. Prestige filed a 2008 New Mexico income

2

tax return for "Pass-Through Entities" (PTE return) on April 16, 2011. After that, Prestige filed the 2009 PTE return on April 24, 2012, the 2010 PTE return on April 12, 2012, and the 2011 PTE return on January 23, 2015. Between January 2008 and October 2011 Prestige did not report or remit any gross receipts to the State, but invoices established that Prestige charged the tax to its customers. Prestige began to file Combined Reporting System (CRS) returns in January 2011 and reported withholding taxes, but not gross receipts. Prestige filed no CRS returns for any other relevant period.

{6}     The Department conducted an audit and on July 1, 2015, issued a notice of assessment for taxes owed by Prestige. On July 17, 2015, Gabriel and his wife, Lori, organized Platinum. Prestige sold its assets to Platinum, which notified Prestige's customers and immediately began operating at the same location, with the same phone number, and with most of the same employees. In 2016, the Department assessed Platinum as a successor in business to Prestige (Platinum Proceeding). After Platinum filed a formal protest of the assessment, a hearing officer (Platinum hearing officer) determined that Platinum was a successor in business to Prestige and that Platinum was liable for the full assessment of tax principal, but not penalties or interest. Platinum subsequently filed for bankruptcy. On January 18, 2019, the bankruptcy court entered a stipulated plan for reorganization, which included a

payment plan for Platinum to pay to the Department the assessed and owed gross receipts tax.

**{7}** In March 2018, after the Platinum hearing officer's decision but before the Platinum bankruptcy stipulated plan, the Department issued two additional assessments against Gabriel and Elauterio, personally. The assessment notices explained that the Department did not recognize Prestige as a legal entity for the 2008 through 2011 assessment period, because the "business has failed to comply with the registration requirements of the Secretary of State for corporations." Taxpayers protested these assessments, which is the subject of this appeal. The Department argued in response that Taxpayers were personally liable because they continued to operate as a corporation after its cancellation, contrary to NMSA 1978, Section 53-18-9 (1967) (providing that "[a]ll persons who assume to act as a corporation without authority to do so are jointly and severally liable for all debts and liabilities incurred or arising as a result thereof"). The Hearing Officer agreed with the Department and denied Taxpayers' protest. Taxpayers appeal.

**STANDARD OF REVIEW**

**{8}** The Department's assessments of tax owing and demands for payment are presumed to be correct. NMSA 1978, § 7-1-17(C) (2007). The "taxpayer has the burden of coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary." *N.M. Tax'n & Revenue*

4

*Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 8, 336 P.3d 436 (internal quotation marks and citation omitted). If the taxpayer rebuts the presumption of correctness, "the burden shifts to the [d]epartment to demonstrate the correctness of the tax assessment." *Id.*

{9} This Court sets aside the decision of a hearing officer "only if we find [it] to be (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *Team Specialty Prods. v. N.M Tax'n & Revenue Dep't*, 2005-NMCA-020, ¶ 8, 137 N.M. 50, 107 P.3d 4 (internal quotation marks and citation omitted); *accord* NMSA 1978, § 7-1-25(C) (2015). To determine whether substantial evidence supports the Hearing Officer's decision, we view "the evidence in a light most favorable to the agency's decision." *See Casias Trucking*, 2014-NMCA-099, ¶ 19 (internal quotation marks and citation omitted). "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Id.* ¶ 20 (internal quotation marks and citation omitted). We review de novo questions of law and the application of the law to the facts. *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474.

**DISCUSSION**

{10} Taxpayers make three arguments on appeal. Taxpayers first maintain that the Hearing Officer incorrectly applied a ten-year, rather than a seven-year statute of

limitations to their failure to file gross receipts tax returns for 2008, 2009, and 2010. Relying on three forms of estoppel, Taxpayers next contend that the findings and arguments in the Platinum Proceeding estopped the Department from arguing in the present case that Prestige was not a corporation. Taxpayers last argue that Elauterio cannot be jointly and severally liable for the assessed taxes, because he did not participate in the operations and management of Prestige. We address each argument in turn.

**I.     The Seven-Year Statute of Limitation Bars the Assessments Prior to 2011**

{11}     The parties dispute which limitations period from Section 7-1-18 applies in this case. "We review de novo whether a particular statute of limitations applies." *Hess Corp. v. N.M. Tax'n & Revenue Dep't*, 2011-NMCA-043, ¶ 22, 149 N.M. 257, 252 P.3d 751 (internal quotation marks and citation omitted). To the extent Taxpayers contend insufficient evidence supports the Hearing Officer's findings relating to the limitations period, our review is for substantial evidence. *See Casias Trucking*, 2014-NMCA-099, ¶ 20.

{12}     Generally, the limitation period for tax assessment is three years. Section 7-1-18(A). The limitation period is extended to ten years under Section 7-1-18(B) "[i]n case of a false or fraudulent return made by a taxpayer with intent to evade tax." To apply the ten-year limitation period set forth in Section 7-1-18(B), as the Hearing Officer did in this case, three requirements must be met: (1) a false or fraudulent

return (2) made by the taxpayer (3) with intent to evade the tax. *See N.M. Tax'n & Revenue Dep't v. Bien Mur Indian Mkt. Ctr.*, 1989-NMSC-015, ¶ 6, 108 N.M. 228, 770 P.2d 873 (explaining that Section 7-1-18(B) "provides the [d]epartment may go back ten years from the end of the year in which the taxes were due when a taxpayer files a fraudulent return"). Alternatively, if a taxpayer fails "to complete and file any required return," the limitation period is "seven years from the end of the calendar year in which the tax was due." Section 7-1-18(C).

{13}    The Hearing Officer applied the ten-year limitation period as provided in Section 7-1-18(B), based on his finding that Taxpayers filed false CRS returns with "intent to evade tax." Specifically, the Hearing Officer found that (1) Taxpayers filed no CRS returns for any relevant period other than January 2011 to October 2011; and (2) Taxpayer filed federal and PTE returns that reported gross receipts for the years 2008, 2009, and 2010, which showed that Taxpayers were aware they had earned gross receipts and had an obligation to report and pay gross receipts taxes.

{14}    Taxpayers do not seek review of the evidence supporting the Hearing Officer's determination that they intended to evade the tax and argue only that the seven-year limitation period applied, because they did not file any gross receipts returns between 2008 and 2010. Our review is therefore limited to whether the evidence supported the Hearing Officer's finding that Taxpayers filed false and fraudulent returns. The Hearing Officer explicitly found, however, that Taxpayers

7

filed CRS returns only for the period between January 2011 and October 2011 and no CRS returns were filed for 2008, 2009, or 2010. To the extent Taxpayers filed federal and PTE returns for the years 2008, 2009, and 2010,[3] which revealed "significant sums of gross receipts," those returns do not trigger the ten-year statute of limitations for 2008, 2009, and 2010. The evidence did not demonstrate that the filed federal and PTE returns were false or fraudulent. To the contrary, the Hearing Officer found that the federal and PTE returns reflected that gross receipts were earned and show a post-2011 understanding that CRS returns *should have been* filed for earlier years. The only false CRS returns were filed in 2011. No evidence demonstrates that the PTE returns filed for 2008, 2009, and 2010 were false or fraudulent. As a result, the ten-year limitation period for filing false or fraudulent returns does not apply to those years. *See Bien Mur*, 1989-NMSC-015, ¶ 6 (requiring, inter alia, that a false or fraudulent return be made by the taxpayer for the ten-year limitation period in Section 7-1-18(B) to apply). Instead, the seven-year limitation period found in Section 7-1-18(C), relating to the failure to file a return, applies and in the present case, bars the Department from assessing Taxpayers personally for the years 2008, 2009, and 2010.

---

[3]The parties dispute whether the filing of federal and PTE returns, as opposed to CRS returns, triggers the application of Section 7-1-18(B) and the ten-year limitation period in this case. Because the evidence does not demonstrate that the filed federal and PTE returns were false or fraudulent, we need not resolve this question.

**{15}** As Taxpayers acknowledge, the Department timely assessed the 2011 debt, and we therefore must further consider Taxpayers' remaining arguments as they relate to 2011.

**II.     The Department, in Its 2018 Assessments, Is Not Precluded on Estoppel Grounds From Personally Assessing Unpaid 2011 Gross Receipts Tax Against Taxpayers**

**{16}** Taxpayers invoke three forms of estoppel to support their position that the Platinum Proceeding precludes the Department's March 2018 assessments. Taxpayers acknowledge that each form of estoppel has different elements, but they argue that each doctrine precludes the personal assessments based on a single fact. Taxpayers contend that for Platinum to be liable as a successor in business to Prestige, there must have been an implicit finding by the Platinum hearing officer or a recognition by the Department in the Platinum Proceeding that Prestige was a corporation for the relevant years. Taxpayers maintain that as a result of such an implicit finding or recognition, the Department should be estopped from arguing in the present proceeding that Taxpayers were personally liable based on the revocation of Prestige's corporate status between 2007 and 2011.

**{17}** We observe that "[g]enerally, principles of equitable estoppel will only be applied against the state when a statute so provides or when right and justice demand it." *Bien Mur*, 1989-NMSC-015, ¶ 9 (internal quotation marks and citation omitted). "[I]n cases involving assessment and collection of taxes, the state will be held

estopped only rarely." *Id.* We conclude that the Department is not precluded from assessing personal liability under these circumstances and address each asserted form of estoppel separately.[4]

**A.      Collateral Estoppel**

{18}      We first consider Taxpayers' collateral estoppel argument. A party seeking to apply collateral estoppel must first establish four elements:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Cent. N.M. Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996. Taxpayers contend that Prestige's corporate status was actually litigated and necessarily determined in the Platinum Proceeding. To evaluate Taxpayers' contention, we consider the purpose and nature of the Platinum Proceeding.

{19}      In the Platinum Proceeding, the issue to be decided was whether Platinum was "liable under the assessment as a successor in business to [Prestige]." Taxpayers argue that "the existence of Prestige as a corporation had to be fully litigated in order

---

[4]The Hearing Officer (1) expressed concerns that an administrative hearing officer might not have authority to apply estoppel principles, and (2) questioned whether the State could ever be estopped from assessing taxes. We do not address these issues because, assuming the equitable doctrines identified by Taxpayers are generally applicable in this context, none of them apply in this case.

for the Department to pursue the tax liability against Platinum and for the [Platinum] hearing officer to make a final ruling regarding the liability of Platinum." The Platinum hearing officer, however, did not need to determine that Prestige was a corporation in order to decide whether Platinum was a successor in business to Prestige's gross receipts tax liability. We explain.

{20}     The Legislature has declared: "For the privilege of engaging in business, an excise tax equal to five and one-eighth percent of gross receipts is imposed on any person engaging in business in New Mexico." NMSA 1978, § 7-9-4(A) (2010). The term "person" includes

> an individual, estate, trust, receiver, cooperative association, club, corporation, company, firm, partnership, limited liability company, limited liability partnership, joint venture, syndicate or other entity, including any gas, water or electric utility owned or operated by a county, municipality or other political subdivision of the state; or . . . a national, federal, state, Indian or other governmental unit or subdivision, or an agency, department or instrumentality of any of the foregoing[.]

NMSA 1978, § 7-9-3(N) (2021).[5] The Legislature has defined "engaging in business" without reference to corporate status or form but simply as "carrying on or causing to be carried on any activity with the purpose of direct or indirect benefit." NMSA 1978, § 7-9-3.3 (2019).[6] If a business is transferred to a successor, "any tax

---

[5]In 2021 and 2019, the Legislature amended Section 7-9-3 in a manner that does not impact the present analysis, so we cite the current version of the statute.

[6]In 2019, the Legislature amended Section 7-9-3.3 in a manner that does not impact the present analysis, so we cite the current version of the statute.

from operating the business for which the former owner is liable remains due [and] the successor shall pay the amount due." NMSA 1978, § 7-1-63(A) (1997). The successor in business determination involves weighing a number of factors—none of which involve comparing the corporate forms of the initial and successor businesses. *See* 3.1.10.16(A) NMAC (outlining eight factors to determine successor in business status).

{21}     The Platinum hearing officer did not need to decide whether Prestige was a corporation in order to determine whether Prestige had outstanding tax liability to which Platinum was a successor. Prestige would have been liable to remit gross receipts taxes for engaging in business, regardless of its corporate status—as an individual, a corporation, "or other entity." *See* § 7-9-4(A) (imposing gross receipts tax on any person engaging in business); § 7-9-3(N) (defining "person"); § 7-9-3.3 (defining "engaging in business"). As a result, if Platinum were a successor in business to Prestige, Prestige would also be liable for taxes that were due, even if Prestige were not an active corporation. *See* § 7-1-63(A). The Department was therefore not required to argue in the Platinum Proceeding, and the Platinum hearing officer was not required to determine, that Prestige was a "corporation" at the time the taxes were incurred in order to later assess Platinum for Prestige's tax liability.

{22}     The limited record available from the Platinum Proceeding supports a conclusion that Prestige's corporate status was not litigated or decided. To determine

12

whether Platinum was a successor in business to Prestige, the Platinum hearing officer appropriately focused on the 2015 transition between Prestige and Platinum. *See* 3.1.10.16(A) NMAC (outlining factors related to the transfer of business enterprises). The Platinum Proceeding findings do not refer to Prestige's corporate status between 2008 and 2011. While the Platinum hearing officer referred to Prestige as "the corporation," these references do not require application of estoppel in the absence of any other evidence that the matter was raised or litigated. *Cf. Keith v. ManorCare, Inc.*, 2009-NMCA-119, ¶ 39, 147 N.M. 209, 218 P.3d 1257 (refusing to apply judicial estoppel based on a party's colloquial references).

{23}    Taxpayers have failed to demonstrate that the question of Prestige's corporate status was actually litigated and necessarily determined in the Platinum Proceeding. The Hearing Officer therefore correctly determined that the Department's 2018 assessments against Taxpayers were not precluded by collateral estoppel.

**B.    Corporation by Estoppel**

{24}    Taxpayers argue that "corporation by estoppel" precludes the Department from arguing in the present proceeding that Prestige was not a corporation between 2007 and 2011. Taxpayers point to *Timberline Equipment Co. v. Davenport*, 514 P.2d 1109, 1111-12 (Or. 1973) (en banc), to define the doctrine of "corporation by estoppel" as preventing "a party from denying corporate existence if that party has in the past recognized the entity's existence as a corporation even if the entity failed

13

to incorporate or incorporated defectively." The New Mexico Supreme Court has similarly held that defendants who "dealt with" the plaintiffs as a corporation are "estopped to deny its legal existence." *Palatine Ins. Co. v. Santa Fe Mercantile Co.*, 1905-NMSC-026, ¶ 15, 13 N.M. 241, 82 P. 363.[7] While the traditional elements of equitable estoppel—reliance, misrepresentation, change of position—might not be required to establish corporation by estoppel, *see Timberline Equip. Co.*, 514 P.2d at 1111-12, the corporation by estoppel doctrine applies only "when it [would] be inequitable not to apply it." *Montoya v. Hubbell*, 1922-NMSC-054, ¶¶ 5-7, 28 N.M. 250, 210 P. 227; *see also* 8 Fletcher Cyc. Corp. § 3889 (2021) ("The corporation by estoppel doctrine rests upon equitable principles, and should only be applied when equity requires it.").

{25}     In *Timberline Equipment Co.*, the Court explained that in order to properly apply the corporation by estoppel doctrine, "the cases must be classified according to who is being charged with estoppel." 514 P.2d at 1112. Specifically, "[w]hen a defendant seeks to escape liability to a corporation plaintiff by contending that the plaintiff is not a lawful corporate entity, courts readily apply the doctrine of corporation by estoppel." *Id.* Courts are "more reluctant" to apply the doctrine when

---

[7] Taxpayers contend that the Hearing Officer erroneously concluded that Section 53-18-9 "eliminates the doctrine of corporation by estoppel." We address Taxpayers' arguments assuming the doctrine of corporation by estoppel remains viable in New Mexico.

14

individuals "seek to escape liability by contending that the debtor is a corporation, rather than the individual who purported to act as a corporation." *Id.* Taxpayers admittedly fall into the second category but nevertheless contend that because the Department treated Prestige as a corporation in the Platinum Proceeding in order to assess Prestige's tax liability against Platinum, the Department is now estopped from denying Prestige's corporate status to assess liability against Taxpayers. We disagree.

{26}     Taxpayers acknowledge that the Department engaged in the Platinum Proceeding believing that Prestige had been a corporation. As explained in relation to collateral estoppel, the Department did not "deal with" Platinum or Prestige specifically as a corporation, but instead, as taxpayers. Taxpayers point to no particular conduct of the Department that demonstrates the Department dealt with Prestige or Platinum "on a corporate basis." *See Cranson v. Int'l Bus. Machs. Corp.*, 200 A.2d 33, 38 (Md. 1964) (describing the application of "the estoppel doctrine when there had been substantial dealings between them on a corporate basis"). In *Cranson*, the defendant relied on the plaintiff's corporate status and "relied on its credit" rather than on the credit of the individual defendant. *Id.* at 39. In this case, the Department did not rely on the corporate status or any corporate aspect of either Platinum or Prestige to assess taxes due or to argue that Platinum was a "successor

15

in business." Taxpayers identify no particular aspect of the stipulated bankruptcy plan that relies on Prestige's corporate status.

**{27}** New Mexico courts have recognized that the principle of corporation by estoppel applies "only in the interest of justice, or when it will be inequitable not to apply it." *Montoya*, 1922-NMSC-054, ¶¶ 5-6 (estopping a corporate officer and director from denying "the proper organization of the corporation"). The Department's references to Prestige as a corporation in the Platinum Proceeding are unremarkable under the circumstances, and the Department did not rely on Prestige's status as a corporation to assess tax liability. *Cf. Keith*, 2009-NMCA-119, ¶¶ 39-41 (determining that a "casual reference" does not "rise to the level required to invoke judicial estoppel" unless the "use of the phrase in any way affected the resolution" of a successful motion). We therefore decline to apply corporation by estoppel to preclude the Department from assessing personal liability against Taxpayers for tax year 2011. *See Lopez v. State*, 1996-NMSC-071, ¶ 20, 122 N.M. 611, 930 P.2d 146 (observing that New Mexico courts are "reluctant to apply estoppel against the state and its agencies").

**C.    Judicial Estoppel**

**{28}** Taxpayers additionally contend that the Department should be judicially estopped from arguing Prestige was not a valid corporation during the assessment period, because Taxpayers maintain that the Department took the position in the

16

Platinum Proceeding that Prestige was a corporation to argue Platinum was a successor in business. "Judicial estoppel prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position, especially if doing so prejudices a party who had acquiesced in the former position." *Guzman v. Laguna Dev. Corp.*, 2009-NMCA-116, ¶ 12, 147 N.M. 244, 219 P.3d 12 (internal quotation marks and citation omitted). The record does not demonstrate that the Department assumed inconsistent positions between the Platinum Proceeding and in the present case.

{29} Taxpayers point to no evidence to establish that during the Platinum Proceeding, the Department "successfully argued" the position that Prestige was a valid corporation during the assessment period. *See Keith*, 2009-NMCA-119, ¶ 39. In *Keith*, the plaintiff argued that the defendant should be judicially estopped from contradicting language previously used in successful motions. *Id.* ¶¶ 38-40. This Court disagreed and explained that the plaintiff failed to demonstrate that the particular language used in the motions affected the outcome. *Id.* ¶ 40. Because the matter to be estopped "was not at issue in any of the motions or hearings" on which the plaintiff relied, and the defendant could therefore not have "successfully argued" that position, judicial estoppel did not apply. *Id.* Similarly, as we have discussed, Taxpayers have not shown that Prestige's corporate status was at issue in the Platinum Proceeding, the Department therefore did not successfully argue or assume

17

a position on Prestige's corporate status, and judicial estoppel therefore does not apply.

{30} Further, the Department's positions in the Platinum Proceeding and in the present case are not inconsistent. The Department's position in the Platinum Proceeding was that Prestige owed gross receipts taxes and that Platinum, as a successor in business, was obligated to pay Prestige's liability. The Department's position in the present case is that pursuant to Section 53-18-9, Taxpayers are personally and jointly and severally liable for Prestige's liability—because they assumed to act as a corporation without authority to do so between 2008 and 2011. As discussed, Prestige could be liable for gross receipts tax even if it were not a valid corporation, and Platinum could be a successor in business and liable for the unpaid tax even if Prestige were not a valid corporation. Gabriel and Elauterio could also be personally—and jointly and severally—responsible for Prestige's tax liability because of their own actions. *See* § 53-18-9 (providing for joint and several liability for debts incurred as a result of acting as corporation without authority). The Department's assertions that both Platinum and Taxpayers are liable for Prestige's taxes are not inconsistent but instead, represent the separate application of Section 7-1-63 (successor in business assessments) and Section 53-18-9 (joint and several liability for unauthorized assumption of corporate powers).

18

**{31}** Under these circumstances, the Department "cannot be said to have been playing fast and loose" in the present case so as to warrant applying judicial estoppel. *See Keith*, 2009-NMCA-119, ¶ 40 (internal quotation marks and citation omitted); *id.* (holding that judicial estoppel did not apply, because employment status was not at issue in the hearings and motions cited); *see also Bien Mur*, 1989-NMSC-015, ¶ 9 (applying estoppel against the state only rarely in the matter of tax assessment). Judicial estoppel is therefore inapplicable in the present case.

**III.     The Evidence Supports the Department's Personal Assessment Against Elauterio for Prestige's 2011 Tax Liability**

**{32}** Taxpayers last challenge the Hearing Officer's conclusion that Elauterio is personally liable for gross receipts taxes owed by Prestige and contend that Elauterio did not participate in the operations of or manage Prestige. The Hearing Officer made a number of factual findings related to Elauterio's activities and subsequently concluded that Taxpayers, including Elauterio, were personally liable under Section 53-18-9. We affirm.

**{33}** Section 53-18-9 provides, "All persons who assume to act as a corporation without authority to do so are jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." Taxpayers argue this Court should adopt the definition of the Supreme Court of Oregon in *Timberline Equipment Co.* to construe the term "assume to act as a corporation," as set forth in Section 53-18-9. The *Timberline* court rejected an argument that a person's investment in a business would

19

alone be sufficient to establish that the person assumed to act as a corporation and explained that the phrase "should be interpreted to include those persons who have an investment in the organization and who actively participate in the policy and operational decisions of the organization." *Id.* at 1113-14. We see no reason in the present case to specifically adopt the *Timberline* definition of "assume to act as a corporation" to construe that phrase in Section 53-18-9, considering that unlike in *Timberline*, the Hearing Officer did not rely on a financial investment alone. *See id.*

{34}    The Hearing Officer found that, by his conduct, Elauterio held himself out as a corporation. Beginning in 1997, Elauterio contributed approximately $100,000 to Prestige. Elauterio was an initial director and incorporator, and he was president of Prestige when it incorporated in 1997. He remained a director and incorporator until 2011, when Prestige filed articles of incorporation for the second time. Between 2001 and 2006, Elauterio signed financing statements and purchased and registered vehicles for Prestige. Elauterio's credit was used by Prestige, Elauterio made payments for property and equipment, and he guaranteed loans. From Prestige's inception, Elauterio's course of conduct in relation to Prestige reasonably demonstrates that he assumed to act as a corporation.

{35} Elauterio continued to act as the corporation after Prestige's corporate status was cancelled.[8] For tax year 2008, Prestige reported loss distributions on a corporate tax return and distributed 80 percent of the loss to Elauterio and 20 percent of the loss to Gabriel. The 2008 tax document identifies Elauterio as a "shareholder/partner." The 2008 tax return was filed in April 2011, several months before the September 2011 incorporation date for the second Prestige. The 2008 tax return is relevant in two ways. First, Elauterio accepted the corporate loss for a tax year in which Prestige was not a corporation. Second, Elauterio acquiesced to the filing of the tax return in April 2011—a time when Prestige's corporate status remained cancelled. Throughout Prestige's existence, Elauterio additionally provided his professional services to help construct and maintain the approximately 10,000 square foot shop facility.

{36} Taxpayers essentially ask this Court to reweigh the evidence regarding Elauterio's involvement and draw the inferences favorable to them. This we will not do. *See Casias Trucking*, 2014-NMCA-099, ¶ 24 ("We do not place ourselves in the position of the fact finder and reweigh the evidence."). This Court has explained that Section 53-18-9 "provides that one who holds himself out as a corporation is personally liable for his acts if, in fact, there is no corporation." *Smith v. Halliburton*

---

[8]Neither party argues that Elatuerio's knowledge about the cancellation of Prestige's corporate status is relevant under Section 53-18-9, and we therefore do not address the question.

*Co.*, 1994-NMCA-055, ¶ 29, 118 N.M. 179, 879 P.2d 1198. Considering Elauterio's entire course of conduct, including acts that occurred during the period that Prestige was not a corporation, we affirm the Hearing Officer's determination that Elauterio was personally liable for Prestige's collectable tax debt.

**CONCLUSION**

{37}     We hold that (1) the 2018 assessments are untimely for tax years 2008, 2009, and 2010; (2) the 2018 assessments for 2011 are not barred by any estoppel doctrine; and (3) the Hearing Officer appropriately found Elauterio personally liable for Prestige's 2011 gross receipts tax liability. We therefore remand the matter for recalculation of the personal liability of Gabriel and Elauterio for the gross receipts tax debt of Prestige for the tax year 2011.

{38}     **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**JENNIFER L. ATTREP, Judge**


_____
**JACQUELINE R. MEDINA, Judge**

22